**UNITED STATES of America**

v.

**Benjamin O'CONNOR.**

**Crim. No. 382–66.**

United States District Court
District of Columbia.

April 9, 1968.

Theodore Wieseman, Asst. U. S. Atty., Washington, D. C., for the United States.

Alvin D. Edelson, Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

This indictment is the result of an attempted robbery at the Argo Market, 434 Shepherd Street, N. W., in the District of Columbia on or about January 20, 1966. Defendant is charged with Assault with Intent to Commit Robbery,

Assault with a Dangerous Weapon, and Carrying a Dangerous Weapon. When the case was called for trial, the Court inquired of counsel whether there were any preliminary matters that should be heard out of the presence of the jury. It appearing at that time that the complaining witness, Theodore Perper, and another eyewitness, James Johnson, had viewed the defendant for purposes of identification some 19 hours after the offense, the Court held hearings out of the presence of the jury to determine the admissibility of the proffered in-court identification of defendant by these two witnesses.

The opinion of the Supreme Court in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (June 12, 1967) directed new attention to the proposition that a pretrial confrontation between witness and defendant may be "so unnecessarily suggestive and conducive to irreparable mistaken identification"[1] as to amount to a denial of due process of law. *Stovall*, United States v. Wade,[2] and Gilbert v. California,[3] all published on the same day, comprise a trilogy which indicates the concern of the Supreme Court over "line-up" and "show-up" procedures that might lead to mistaken identification of a suspect by a witness who is prejudicially amenable to the power of suggestion. *Wade* and *Gilbert* establish a right to counsel at pretrial confrontations and although the extent of this right in particular circumstances has yet to be authoritatively determined, it is clear that these two cases do not have retroactive application.[4] There is no question of the retroactivity of Part II of *Stovall*, however, for the due process concept there enun-

ciated is an integral part of our criminal jurisprudence. The impact of *Stovall*, therefore, has manifested itself not in the creation of new law, but rather in a re-evaluation of traditional due process concepts with a view toward contemporary law enforcement practices.

■ The main theme of the *Stovall* decision concerned the possible unfairness of a procedure by which a witness is confronted with one suspect rather than being asked to identify one individual from a number of possibilities. It is clear that this possibility of unfairness potentially amounting to a denial of due process must be examined in the context of the totality of the circumstances surrounding the challenged confrontation.[5]

Since the *Stovall* decision, this jurisdiction has had the benefit of two appellate opinions on the issue, Wise v. United States, 383 F.2d 206 (1967), and Wright v. United States, supra, note 4. The first of these cases, *Wise*, established the proposition that where the confrontation occurs proximate to the scene and time of the offense as well as the arrest, and in the absence of other aggravating factors which might increase the possibility of a mistaken identification, presentation of a single suspect to a witness for purposes of identification does not "diverge from the rudiments of fair play that govern the due balance of pertinent interests that suspects be treated fairly while the state pursues its responsibility of apprehending criminals."[6] *Wright* involved a confrontation between witness and suspect at a police station. Speaking for the majority, Judge Robinson refused to rule on the merits of the *Stovall* challenge with-

1. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

2. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

3. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

4. Stovall, supra, note 1, 388 U.S. at 296, 87 S.Ct. 1967; Wright v. United States, No. 20,153 (D.C.Cir., January 31, 1968),

at pp. 4–5 and authority cited therein.

5. Stovall, supra, 388 U.S. at 302, 87 S.Ct. 1967; Wright, supra, at p. 6.

6. Wise v. United States, 383 F.2d 206, 210 (D.C.Cir., 1967). See also footnote 2 of Judge Bazelon's dissent in Wright, supra, at p. 10.

out amplification of the record as to pertinent facts. In remanding the case, however, the majority indicated the particular nature of some of the missing data.[7] Therefore, with these cases in mind, the Court concluded that the following factors are relevant in determining whether a pretrial confrontation between a suspect and the identifying witnesses was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law."[8]

1. Was the defendant the only individual that could possibly be identified as the guilty party by the complaining witness, or were there others near him at the time of the confrontation so as to negate the assertion that he was shown alone to the witness?

2. Where did the confrontation take place?[9]

3. Were there any compelling reasons for a prompt confrontation so as to deprive the police of the opportunity of securing other similar individuals for the purpose of holding a line-up?[10]

4. Was the witness aware of any observation by another or other evidence indicating the guilt of the suspect at the time of the confrontation?

5. Were any tangible objects related to the offense placed before the witness that would encourage identification?[11]

6. Was the witness' identification based on only part of the suspect's total personality?[12]

7. Was the identification a product of mutual reinforcement of opinion among witnesses simultaneously viewing defendant?

8. Was the emotional state of the witness such as to preclude objective identification?

9. Were any statements made to the witness prior to the confrontation indicating to him that the police were sure of the suspect's guilt?

10. Was the witness' observation of the offender so limited as to render him particularly amenable to suggestion, or was his observation and recollection of the offender so clear as to insulate him from a tendency to identify on a less than positive basis?

Other factors will also be significant in a particular case.

■■ Before proceeding to an evaluation of these factors in the context of the present case, it might be well to note that the decision on the due process issue does not necessarily resolve the question of whether witnesses who have viewed the defendant at a pretrial confrontation should be allowed to identify the defendant in court at the trial. If the circumstances of the confrontation do not amount to a denial of due process, of course, that question is answered in the affirmative. If, on the other hand, the confrontation has been so unfair as to amount to a denial of due process, the Government has the opportunity of establishing by clear and convincing evidence that the proffered in-court identification of the defendant by the witness has an origin independent of the witness' observations during the challenged confrontation.[13]

Generally, this independent origin will be the observations of the witness during the commission of the offense itself. If the Government is able to meet this burden, then the witness should be allowed to identify the defendant in court at trial regardless of the improper confrontation following arrest. Of course, if the witness had seen the accused on prior occasions or if he were acquainted

---

7. Wright, supra, at p. 7.

8. Stovall, supra, note 1, 388 U.S. at 302, 87 S.Ct. 1967.

9. See note 6, supra.

10. See Stovall, supra, note 1, 388 U.S. at 302, 87 S.Ct. 1967.

11. See Palmer v. Peyton, 359 F.2d 199, 201 (4th Cir. 1966), particularly in relation to the orange shirt in that case.

12. Ibid.

13. Wright, supra, note 4 at pp. 8–9.

with the accused, testimony concerning identification at the time the offense was committed would be reinforced.

■■■ Factors in this latter determination include the opportunity of the witness to observe the offender at the scene of the crime and his demonstration of the reliability of that observation by giving a fairly accurate description of the offender prior to the challenged confrontation. It is difficult to probe the mind of the witness in this regard, but speculation on the issue is precluded by the "clear and convincing evidence" standard. Further, the initial decision is within the discretion of the trial court which has the unique opportunity to get the "feel" of the case and to evaluate the witnesses. Of course, the ultimate decision as to whether the Government has proved identity beyond a reasonable doubt is for the jury.

With these criteria in mind, the Court first heard the testimony of the complaining witness, Theodore Perper. Mr. Perper testified that on the morning of January 20, 1966, he was accosted by a man with a gun who jumped upon a counter in his place of business. Seeing Mr. Perper's dog, the man fled. Within a few minutes after this incident, Mr. Perper described the man to police as 5'7" to 5'9", of medium brown com-5'-7" to 5'-9", of medium build, with a plexion and medium build, with a "blotchy" skin apppearance, and wearing a brown felt hat and a beige raincoat. He further testified that although his assailant wore a woman's transparent stocking over the upper part of his face, his features were visible through the mask.

At approximately 4:00 A.M. on the morning of the 21st, some 18 hours after the attempted robbery, Mr. Perper was called by the Metropolitan Police and asked to come to Headquarters to see if he could identify one of two suspects. Some time later, the defendant and his uncle, who had been arrested in a vehicle similar to one seen in suspicious circumstances near the scene and at about the time of the offense and bearing license tags with four of the five numbers supplied by an eyewitness, were shown to Mr. Perper. By Mr. Perper's account, he was able to identify defendant, but in addition, there was no substantial similarity between the other individual shown to him and the description he had given. He further testified that he was unsure whether he knew of the circumstances of the defendant's arrest prior to the identification. When asked specifically as to the basis of his present identification of defendant, he stated that he could identify the defendant solely from his recollection of the perpetration of the attempted robbery.

The Court next heard testimony from Lt. Sherwood Herring of the Metropolitan Police. He testified that when arrested, defendant had some grayish lotion on the lower part of his face. The circumstances of the show-up, as recalled by Lt. Herring, were substantially the same as testified to by Mr. Perper, but the Lieutenant added that while both Mr. Perper and the witness James Johnson identified the defendant, they did so out of the presence of one another. Questioned about the lack of a line-up, Lt. Herring stated that because of the hour, there were no persons in custody comparable in appearance to the defendant and that the use of police officers in a line-up is not favored. He conceded that a line-up would have been possible at a later time. After some hesitation, he stated that he was "sure" that any conversation he had with Mr. Perper concerning the circumstances of defendant's arrest was after the identification.

At this time, it was stipulated by and between counsel that Detective Robert Jones might possibly have informed Mr. Perper of the circumstances of defendant's arrest prior to the identification.

The defendant, Benjamin O'Connor, testified briefly and corroborated the fact that he was not confronted by Mr. Perper and Mr. Johnson at the same time.

Upon consideration of whether defendant's confrontation with Mr. Perper was so unnecessarily suggestive and conducive to irreparable mistaken identity so as to amount to a denial of due process of law, the Court found the following factors significant. First, in spite of the presence of his uncle, defendant was essentially the only person present who could have been identified as the guilty party by Mr. Perper. In addition, the confrontation took place in a police station at a most unusual hour. Mr. Perper may very well have concluded that he would not have been asked to appear at such an hour had not the police been quite sure of the guilt of the suspect. Further, there was no real need for an immediate confrontation, as defendant could have been held on an independent gun charge. Finally, Mr. Perper may have been aware of the arrest of defendant in an automobile independently tied in with the attempted robbery. There is, of course, an absence of certain of the factors enumerated above, but the Court decided, after balancing the interests involved, that the confrontation went beyond the limits imposed by *Stovall, Wise,* and *Wright.*

Proceeding therefore to the question of whether Mr. Perper's proffered in-court identification had a source independent of the suggestive show-up, the Court considered his testimony that he could see his assailant's features through the mask, and his ability to give an accurate description of defendant prior to the confrontation challenged here. With these facts in mind, and with the testimony of Mr. Perper that he could identify the defendant solely on his recollection of the defendant at the time of the offense itself, the Court ruled his proffered identification admissible as having a basis independent of the show-up held 19 hours after the robbery.

Later in the trial, James Johnson [14] was called as a witness for the Government. During his direct testimony, Mr. Johnson identified defendant as the individual he had observed putting on a stocking mask outside the Argo Market. Mr. Johnson testified that when he went into the Market he was followed by defendant who fled down the alley toward Taylor Street when repulsed by the dog. During the cross-examination of Mr. Johnson, the jury was excused and testimony was taken concerning his confrontation with defendant at Headquarters early on the morning of the 21st.

■ After hearing from Mr. Johnson, and from Detective Robert Jones who indicated that the gun found on defendant at the time of his arrest may have been shown to Mr. Johnson prior to the identification, the Court ruled that, as in the case with Mr. Perper, the confrontation at Headquarters between Mr. Johnson and defendant was beyond allowable limits of police conduct. Relevant factors were substantially similar to those involved in the Court's earlier ruling. However, as in the case with Mr. Perper, the Court was convinced that the proffered identification by Mr. Johnson, who had viewed defendant at the scene of the offense even more extensively than Mr. Perper, had a source independent of the show-up conducted on the morning of January 21st. Mr. Johnson testified definitively that his identification of defendant was based on what he saw at the Argo Market and was not affected by his viewing of the defendant the next day. The Court found this conclusion supported by clear and convincing evidence.

■ In summary, the proffered identification of defendant by the witnesses Mr. Perper and Mr. Johnson presented essentially two close questions. First, was the show-up conducted in this case so unnecessarily suggestive and conducive to irreparable mistaken identification as to amount to a denial of due process of law and second, were these identifications shown by clear and convincing evidence to have sources independent of the show-up? After extensive hearings out of the presence of the

14. The witness had moved and was not available the first day of the trial.

jury, and consideration of the authorities hereinabove cited, the Court found both questions properly resolved in the affirmative. Wherefore, in view of the Court's affirmative ruling on the second question, the witnesses were permitted to identify defendant in the presence of the jury. While the Government was precluded from introducing any mention of the show-up conducted in this case, the decision of whether to argue the suggestibility of the confrontation in behalf of defendant was left in the hands of defense counsel. Directing the tactics of defense counsel, as to mention of evidence over which he had the power of exclusion, was not within the province of the Court if for reasons of trial strategy he saw fit to go into it.