**Earl Leslie ROBERTS, 31192, Petitioner,**

**v.**

**C. T. GLADDEN, Warden, Respondent.**

**Civ. No. 68–159.**

United States District Court
D. Oregon.

Nov. 13, 1968.

**386**

L. James Bergmann, Portland, Or., for petitioner.

Robert Y. Thornton, Atty. Gen., of Oregon, David H. Blunt, Asst. Atty. Gen., Salem, Or., for respondent.

## OPINION

SOLOMON, Chief Judge:

A State court jury convicted Earl Leslie Roberts (Petitioner) of "assault and robbery armed with a dangerous weapon;" he received a 15-year sentence. Petitioner's conviction was affirmed on appeal, State v. Roberts, 245 Or. 97, 420 P.2d 391 (1966); 86 Or.Adv.Sh. 203, 437 P.2d 731 (1968). Petitioner now seeks relief in this Court under 28 U.S.C. § 2241 et seq. All available State court remedies are exhausted. 28 U.S.C. § 2254(b). I appointed counsel to represent Petitioner and a hearing was held in Salem on July 12, 1968.

■ Petitioner first contends that his in-court identification by four witnesses denied him due process of law because earlier confrontations with these witnesses were conducive to irreparable misidentification.

Each of the four witnesses who identified Petitioner at his trial saw the person who committed the July 2, 1965, robbery. Later, but before the preliminary hearing on July 8, 1965, each witness saw Petitioner's picture in a newspaper article on his arrest for the robbery. On July 8, each witness identified Petitioner at a preliminary hearing. Finally, in November, 1965, each witness made an in-court identification of Petitioner. Specifically, Petitioner claims that this in-court identification was unreliable because of the witnesses' prior contact with him through the newspaper article and the preliminary hearing.

United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), recognized a Sixth Amendment right to counsel at post-indictment lineups. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), denied retroactive application to *Wade;* but the Court recognized that a confrontation could be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process, "independent of any right to counsel claim." 388 U.S. at 302, 87 S.Ct. at 1972.

The Court cited Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966). In *Palmer,* a rape victim was permitted to make a voice identification of the defendant, later admitted in court, under circumstances which did not "meet 'those canons of decency and fairness' established as part of the fundamental law of the land." 359 F.2d at 202. Specifically, the following procedures troubled the *Palmer* court: the defendant was identified as "a suspect" before the confrontation; there was no lineup, "in stark contrast" to the events on a prior evening; the victim was not permitted to see the defendant; no other voices were provided for comparison; the victim was shown the defendant's orange shirt, apparently similar in color to the shirt worn by the rapist; although the victim had previously heard the rapist's voice while his head was covered with a clothespin bag, the bag was not placed over the defendant's head for the voice test; the defendant was given no opportunity to confront or be confronted by his accuser, "where she might have * * * noticed some mark or mannerism that could aid her in affirming—or disavowing—the voice identification." 359 F.2d at 201.

Petitioner claims that the rationale in *Palmer* is applicable to his case. I disagree. The four witnesses who identified Petitioner at his trial saw his picture in the newspaper and saw Petitioner at the preliminary hearing. Although these pre-trial confrontations contained a risk of later misidentification, they do not amount to a denial of due process. We have not yet adopted a rule which requires an eye-witness to first identify a suspect under "laboratory" conditions before he will be permitted to make an identification in court. The present rule is set out in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). There the Court refused to make pre-trial identification by photograph a violation of due process, but held that "each case must be considered on its own facts." 390 U.S. at 384, 88 S.Ct. at 971.

The circumstances of Petitioner's case are substantially devoid of conduct "unnecessarily suggestive and conducive to irreparable mistaken identification." Although the newspaper photograph linking Petitioner with the robbery did create some risk of misidentification, there is no claim that the police were instrumental in causing its publication. In addition, each of the four witnesses observed the robber and testified that their trial identifications were based on these observations and not on the photograph. See, e. g., United States v. O'Connor, 282 F. Supp. 963 (D.D.C.1968).

Six days elapsed between the robbery and the identification at the preliminary hearing. This short interval assures that the identification at the preliminary hearing was based on observations during the robbery and not on the assumption that the authorities believed Petitioner to be "the" man.[1] Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967); Simmons v. United States, supra, 390 U.S. at 383, 88 S.Ct. 967.

I find that the confrontations between Petitioner and the eyewitnesses prior to the in-court identification did not "give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971.[2]

■ Petitioner next contends that the failure of the trial court to instruct the jury to disregard a denture offered into evidence, but not received, denied him due process of law under the Fifth and Fourteenth Amendments.

The State had attempted to show that a denture discovered near an abandoned vehicle used in the robbery belonged to Petitioner. The trial judge found that the connection between the denture and the defendant was too tenuous to receive the denture in evidence. Although he

---

1. Beatrice J. Stevens was asked if "there is any doubt in your mind whether or not this defendant was the man who came into your store and displayed a gun to you and received in return money from you?" She testified that "there is no doubt in my mind that he is."

Alice A. Frazier was asked if there "was any doubt in your mind [at the preliminary hearing] whether or not this defendant was the man who came into the store, displayed a gun, and took money from the store?"

A. There was no doubt.
Q. At that time?
A. At that time.
Q. Is there any doubt in your mind at this time that this is the same man?
A. He is the same man.

Mr. Frankie G. Frazier was asked if and where he ever saw Petitioner before.

He answered, "I saw him in the Model Market in Winston on the 2nd of July of this year, and I saw his picture again in the paper after he was apprehended."

Mr. Leslie R. Anderson, a customer at the Model Market, testified that he saw Petitioner come from the rear of the store and leave. Asked if Petitioner and the man who robbed the store are the same, he answered "definitely."

2. Petitioner relies on, and the State tries to distinguish Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968). That *per curiam* decision affirmed by an equally divided court, a lower court holding. Petitioner and the State have erroneously read Justice Douglas's dissent as the Opinion of the Court.

rejected the offer, he did not instruct the jury to disregard it.

The Fourteenth Amendment requires that a defendant be given a fair trial; "the fact that a trial court error is prejudicial to defendant [does not] necessarily transform an otherwise fair trial into one which offends Fifth Amendment due process." Nolen v. Wilson, 372 F.2d 15, 17 (9th Cir. 1967). The trial judge's oversight did not convert Petitioner's trial "into one which is repugnant to an enlightened system of justice." Id.

■ Petitioner's third contention is that the failure to sequester the jury during his trial was a denial of due process. There is no merit to this claim. No request to sequester was made. Even if one were made, there is no due process right to sequester a jury under the routine facts of this case.

■ Petitioner claims his right against double jeopardy was violated because he was convicted of two crimes arising out of the same event. The Fifth Amendment right against double jeopardy does not apply to the states. Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Even if it did, there is no double jeopardy here. One event can supply the evidence for two crimes if different facts are elements of each crime. Barnett v. Gladden, 375 F. 2d 235 (9th Cir. 1967); Orlando v. United States, 377 F.2d 667 (9th Cir. 1967).

■ Petitioner's bail was set at $27,-000 from the time of arrest until a week before trial, when it was reduced to $5,000. After his conviction, his bail was raised to $40,000 pending his appeal. Petitioner claims these amounts were excessive and denied him certain constitutional rights. Petitioner does not claim his court-appointed attorney lacked time to prepare his case. Petitioner has shown no prejudice and his constitutional rights were not violated by the amount of bail set. Spaulding v. United States, 279 F.2d 65 (9th Cir. 1960).

■ Finally, petitioner alleges that his Fourth and Fourteenth Amendment right against unreasonable searches and seizures was violated because the police searched his automobile while it was on the private property of a third person. There was probable cause to search the automobile used in the robbery when it was discovered only hours after the crime was committed, Travis v. United States, 362 F.2d 477 (9th Cir. 1966); Petitioner cannot complain of the police entry on the land of a stranger. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960); United States v. Liguori, 373 F.2d 304 (2nd Cir. 1967).

I find that the State of Oregon's custody of Petitioner did not contravene a right guaranteed him by the Constitution or laws of the United States. His petition is dismissed.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a) Fed.R.Civ.P.