# BIGGERS *v.* TENNESSEE.

No. 237. Argued January 15, 1968.—Decided March 18, 1968.

*Michael Meltsner* argued the cause for petitioner. With him on the briefs were *Jack Greenberg, Anthony G. Amsterdam, Avon N. Williams* and *Z. Alexander Looby.*

*Thomas E. Fox,* Deputy Attorney General of Tennessee, argued the cause for respondent. On the brief were *George F. McCanless,* Attorney General, and *Robert F. Hedgepath,* Assistant Attorney General.

PER CURIAM.

The judgment below is affirmed by an equally divided Court.

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, dissenting.[1]

Petitioner was indicted for a rape committed when he was 16 years old, was convicted, and after a trial by a jury sentenced to 20 years, first to a juvenile facility and later to prison. The Supreme Court of Tennessee af-

---

[1] As respects the practice of Justices setting forth their views in a case where the judgment is affirmed by an equally divided Court, see *Communications Assn.* v. *Douds,* 339 U. S. 382, 412–415, 422; *Osman* v. *Douds,* 339 U. S. 846, 847; *In re Isserman,* 345 U. S. 286; 348 U. S. 1; *Raley* v. *Ohio,* 360 U. S. 423, 440; *Eaton* v. *Price,* 364 U. S. 263, 264.

firmed the judgment of conviction. *Biggers* v. *State,* —— Tenn. ——, 411 S. W. 2d 696.

On the night of January 22, 1965, Mrs. Beamer was at home sewing, when an intruder with a butcher knife in his hand grabbed her from the rear. Her screams brought her 13-year-old daughter, who, arriving at the scene, also started to scream. The intruder said to Mrs. Beamer, "You tell her to shut up, or I'll kill you both." Mrs. Beamer ordered her daughter to a bedroom, and the intruder took Mrs. Beamer out of the house to a spot two blocks away and raped her.

During the next seven months the police showed Mrs. Beamer numerous police photographs, one of which, she said, showed a man who "had features" like the intruder. The case lay dormant. Mrs. Beamer was unable to describe the rapist other than to state he was fat and "flabby," had a youthful voice, smooth skin, and "sort of bushy" hair.

On August 17, 1965, petitioner, still only 16 years old, was arrested for the rape of another woman. On the same day the police brought Mrs. Beamer to the police station to "look at a suspect." They brought petitioner to the doorway of the room where she sat. She asked the police to have him speak and they told him to repeat the words spoken by the rapist, "Shut up, or I'll kill you." Only after he had spoken did Mrs. Beamer identify petitioner as the man who had raped her; she testified that it was petitioner's voice that "was the first thing that made me think it was the boy." So far as the record indicates, at the time of this confrontation neither the parents of petitioner nor any attorney acting for him had been advised of the intended meeting with Mrs. Beamer.

The indictment followed. At the trial the daughter testified to what she had seen the evening of the rape, but was unable to identify petitioner as the rapist. The only evidence connecting him with the rape was Mrs.

Beamer's station-house identification. She did not identify him in the courtroom.[2] She testified that she had identified him by his size, his voice, his smooth skin, and his bushy hair. Three of the five police officers who were present at the identification testified over objection in corroboration of Mrs. Beamer's reaction at the confrontation.

This procedure of identification violates, of course, *United States* v. *Wade,* 388 U. S. 218, and *Gilbert* v. *California,* 388 U. S. 263. Those were cases of lineups and this was not. Yet, though they recognized a suspect's right to counsel at that critical stage, the Court announced they would not have retroactive effect.

*Stovall* v. *Denno,* 388 U. S. 293, and *Simmons* v. *United States, ante,* p. 377, make it clear, however, that independent of any right to counsel claim, a procedure of identification may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" that due process of law is denied when evidence of the identification is used at trial. *Stovall* v. *Denno, supra,* at 302. The claim that Mrs. Beamer's identification of petitioner falls within this rule "must be evaluated in light of the totality of surrounding circumstances" with the view of determining if the procedure in petitioner's case "was so unduly prejudicial as fatally to taint his conviction." *Simmons* v. *United States, supra.*

In *Simmons,* identification by use of photographs rather than a lineup was upheld because the bank rob-

---

[2] Respondent contends that Mrs. Beamer made an in-court identification of petitioner as the rapist. But the portions of the record relied on do not support this claim. After Mrs. Beamer had described the station-house identification, the prosecutor asked her, "Is there any doubt in your mind today?" She replied, "No, there's no doubt." The inference to be drawn is that Mrs. Beamer had no current doubt as to the correctness of her previous identification of petitioner at the police station.

bers were still at large, the FBI had to quickly determine whether it was on the right track in looking for Simmons, the witnesses' memories were fresh since the robbery was but a day old, and because the photos pictured persons in addition to petitioner. In *Stovall,* a single-suspect confrontation held in a hospital room was found to comport with due process because the stabbing victim, the sole source of identification, was in danger of death—to have conducted a lineup would have entailed perhaps fatal delay.

We have no such problem of compelling urgency here. There was ample time to conduct a traditional lineup. This confrontation was crucial. Petitioner stood to be free of the charge or to account for it, dependent on what Mrs. Beamer said. Whatever may be said of lineups, showing a suspect singly to a victim is pregnant with prejudice. The message is clear: the police suspect *this* man. That carries a powerfully suggestive thought. Even in a lineup the ability to identify the criminal is severely limited by normal human fallibilities of memory and perception. When the subject is shown singly, havoc is more likely to be played with the best-intended recollections.

As noted, in *Simmons,* where identification was by photograph, the Court stressed that identification was made only a day after the crime while "memories were still fresh." *Id.,* at 385. Here, however, Mrs. Beamer confronted petitioner seven months after the rape, and the sharpness of her recall was being severely tested. In *Simmons,* too, the Court emphasized that the five witnesses had seen the robbers "in a well-lighted bank." *Ibid.* Here, however, there was "[n]o light in the hall" where Mrs. Beamer was first assaulted; from that hall, the assailant took her out of the house through a kitchen where there was "no light," and the railroad track where the rape occurred was illuminated only by

the moon. Indeed, the best view Mrs. Beamer had of petitioner was in the hall by indirect light from a nearby bedroom.

In *Simmons,* the record did not indicate that the FBI told the witnesses which of the men in the photographs were suspects. Here, on the other hand, the police told Mrs. Beamer when they brought her to the station house that the man she would see was a "suspect."

Moreover, unlike the *Simmons* case, identification here rested largely on voice. The fact that petitioner had "the voice of an immature youth," to use Mrs. Beamer's words, merely put him in a large class and did not relate him to speech peculiar to him. Voice identifications involve "grave danger of prejudice to the suspect," as the Court of Appeals for the Fourth Circuit said in *Palmer* v. *Peyton,* 359 F. 2d 199, 201. No one else identified petitioner. The daughter could not; and Mrs. Beamer did not identify him in the courtroom. Petitioner was young and apparently had no previous police record. There was no other shred of evidence against him.

Under the circumstances of this case it seems plain that the police maximized the suggestion that petitioner committed the crime.

Of course, due process is not always violated when the police fail to assemble a lineup but conduct a one-man showup. Plainly here, however, the highly suggestive atmosphere that had been generated by the manner in which this showup was arranged and conducted could not have failed to affect Mrs. Beamer's judgment; when she was presented with no alternative choices, "there [was] then a strong predisposition to overcome doubts and to fasten guilt upon the lone suspect." *Palmer* v. *Peyton, supra,* at 201. The conclusion is inescapable that the entire atmosphere created by the police surrounding Mrs. Beamer's identification was so suggestive

that use at trial of her station-house identification constituted a violation of due process.  Since this was the only evidence of identification, there can be no question of harmless error.  See *Chapman* v. *California,* 386 U. S. 18.

Petitioner is entitled to a new trial unaffected by Mrs. Beamer's station-house identification and the testimony of the police officers who were present when it took place. See *Gilbert* v. *California, supra,* at 272–273.

The fact that petitioner is a Negro, and Mrs. Beamer also, is of course irrelevant to the due process question.