**STATE of Delaware**

v.

**DeNorval BRATTEN and Jerry W. Harris.**

Superior Court of Delaware.

New Castle.

July 23, 1968.

---

Jerome O. Herlihy, Deputy Atty. Gen., Wilmington, for the State.

James F. Kipp, Asst. Public Defender, Wilmington, for defendants.

STIFTEL, President Judge.

On the evening of August 9, 1967, at 8:00 P.M., a liquor store was allegedly robbed by two Negro males. A description of the robbers was given by the store manager to detective Argo, who later relayed it to trooper Steen.

At approximately 1:00 A.M., four Negroes were involved in an auto mishap in a motel parking lot. Trooper Steen arrived to investigate the mishap and noted that two of the four resembled the description of the robbers given him some five hours earlier.

The liquor store manager was called and arrived a half hour later. He attempted an identification by peering through a window, but was unable to do so. Inside the motel office he requested that one of the defendants remove his glasses; and upon removal of the glasses, the defendant Bratton was identified as one of the robbers, along with defendant Harris. They drove a different car from that described as the get-away car and neither wore a dark shirt as earlier described.

The store manager states that he could not identify defendants now without reference to the original confrontation and defendants, who had no lawyer at the time, move to suppress on the basis of the *Wade* and *Gilbert* decisions.[1]

The facts in *Wade* and *Gilbert* are substantially different from the facts here. *Wade* and *Gilbert* involve formal, post-indictment lineups conducted at a time when counsel had already been appointed. Here the identification proceeding was not a formal police station lineup, took place before any arrest was made and before counsel had been appointed.

The question for decision is whether the instant identification confrontation was a "critical stage of the proceedings" within the meaning of *Wade*.

*Wade* is concerned with fair trial for the accused. Defendant's destiny may be sealed by the time a trial is commenced if in a pre-trial confrontation with the State he is not adequately protected by advice of counsel in asserting his rights. In *Wade* and *Gilbert*, the Supreme Court aimed to "discontinue the abuses that existed heretofore in state-conducted lineup procedures". During these police station lineups, the accused was often the victim of intentional

1. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

and unintentional suggestions made by the police to the identifying witness. The accused was also subjected to peculiar surroundings which worked against his interest, such as one-way mirrors and special lighting effects. Also, it was not unusual for the other members of the lineup with whom defendant was to be compared to be so unusually distinctive and different from the defendant as to highlight the identity of the defendant. Thus, in *Wade* the Supreme Court was concerned with the "potential for improper influence", see United States v. Wade, supra, 87 S.Ct. at 1936; with the influence of improper suggestions upon the identifying witnesses, see *Wade* at 1933; and with the hazards of unfairness attendant to the lineup processes and with the inability of the defendant effectively "to ferret out suggestive inferences in the secrecy of the confrontation."

■ The Court, then, is concerned with the potential prejudice inherent in the nature of the particular confrontation. It is not actual prejudice, but the opportunity for prejudice or unfairness that controls. If the opportunity for substantial unfairness is inherent in the nature of the confrontation, and the presence of counsel could help avoid that prejudice, the stage is critical and the right to counsel attaches.

■ The rationale of *Wade* and *Gilbert* was that an accused is entitled to counsel at "any critical stage of the proceeding" and·that a post-indictment lineup is such a "critical stage".[2] See Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247. The philosophy as enunciated by Mr. Justice Brennan in *Wade* and *Gilbert* can almost rule out any kind of confrontation without the presence of counsel. This was the fear expressed by Justice White in his dissent. It is doubtful if the Supreme Court intended to go to

this extreme. In fact, it would appear that if the confrontation is removed from the police station, the determination of "criticalness" of the proceedings must, at least for the present, be taken on a case-by-case basis.

I now apply the rationale of the *Wade* case to the instant facts to determine if the identification confrontation of defendants occurred at a "critical stage" of the proceedings.

In the instant case, only five hours had elapsed between the time of the alleged robbery and the identification made by the victim. The defendants had not been arrested. No counsel had been appointed. In fact, they had recently been involved in a minor automobile mishap. These facts are in contrast with *Wade*, where a bank robbery took place on September 21, 1964; an indictment was returned on March 23, 1965. Wade was arrested on April 2, 1965, and counsel was appointed to represent him on April 26. Fifteen days later, without notice to Wade's lawyer, two bank employees observed a lineup and identified Wade. This post-indictment lineup took place more than six months after the robbery. It was held to be a "critical stage" of the prosecution, at which time Wade was entitled to his attorney, who had already been appointed.

In *Gilbert*, three eye witnesses to one robery observed Gilbert at a lineup conducted without notice to his counsel, sixteen days after his indictment and after appointment of counsel. The robbery occurred on January 3, 1964; Gilbert was arrested on February 26. The lineup occurred on March 26, 1964. Thus, the lineup occurred in the police station approximately three months after the robbery.

In Commonwealth v. Bumpus, 3 Cr.L.Rep. 3207, the Massachusetts Supreme Judicial Court refused to apply the *Wade* doctrine

**2.** Mr. Justice Brennan suggests that the critical stage aspects of identification proceedings can be eliminated by adopting, through administrative or legislative provisions, methods of fair identification, see *Wade*, 388 U.S. at 239, 87 S.Ct. at 1938. Regulations aimed at providing fair identification procedures have already been adopted by the Pittsburgh police, see 29 U.Pitt.L.Rev. 65, 85 (1967).

to the facts before it, where the defendant was identified by the victim a few minutes after an alleged burglary. The Court explained that this was a reasonable confrontation in contradistinction to the post-indictment confrontation after a significant interval of time and in the absence of already appointed counsel, as was present in *Wade*.

The chance for misidentification under the facts of the principal case is slim where the identification was made only five hours after the robbery and where the victim's memory was fresh. Cf. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 972, 19 L.Ed.2d 1247; and Biggers v. State of Tennessee, 390 U.S. 404, 88 S.Ct. 979, 981, 19 L.Ed.2d 1267. The victim here testified that he saw defendants in his store clearly. They were there for a period of time. The police officer had not even made an arrest. He wanted to be sure he had the right persons. The victim came almost forthwith to the place where defendants and the other gentlemen were being held. As was said in *Bumpus*, proper police protection of the public may be greatly embarrassed by applying "rigid rules restricting intelligent, fair police action." *Simmons* and *Biggers* support the view that a common sense approach to the problems which confront policemen must be taken into consideration in the application of the law to the facts.

I hold that the confrontation of the defendants under the circumstances of this case is not a violation of the *Wade* and *Gilbert* rule and therefore their motion to suppress the testimony of an eye witness must be denied.

So ordered.