**Wilbur Leo SEARS, Petitioner,**

v.

**Maurice H. SIGLER, Warden, Nebraska Penal Complex, Respondent.**

**Civ. 1434L.**

United States District Court
D. Nebraska.

April 24, 1969.

Ted L. Schafer, Lincoln, Neb., for petitioner.

Ralph H. Gillan, Asst. Atty. Gen., State of Nebraska, Lincoln, Neb., for respondent.

## MEMORANDUM AND ORDER

VAN PELT, District Judge.

The petitioner has applied to this court for a writ of habeas corpus. The petitioner was tried and convicted of burglary and subsequently sentenced to a term of ten years imprisonment as a habitual criminal. The conviction was affirmed on appeal by the Nebraska Supreme Court, State v. Sears, 182 Neb. 384, 155 N.W.2d 332 (1967), and he has thus exhausted his state court remedies. He is presently serving his sentence at the Nebraska Penal and Correctional Complex. This court appointed counsel for the petitioner, a hearing was had, and upon oral argument, the case was submitted to this court. It now stands ready for decision.

The parties have entered into a stipulation of the questions before the court (filing No. 8) and they may be summarized as follows:

1) Whether the petitioner was denied his right to counsel as guaranteed by the Sixth Amendment, his right to invoke his privilege against self-incrimination as provided by the Fifth Amendment, and his right to due process of law as guaranteed by the Fourteenth Amendment when he was taken before witnesses to a crime, at the scene of the crime, without being provided the assistance of counsel.

2) Whether he was deprived of constitutional rights when the police failed to inform him of his constitutional rights, privileges, and guarantees.

3) Whether the petitioner was denied his right to a fair trial when the prosecution made reference to the statements of two girls who were unavailable to testify, which had been taken by the police.

4) Whether the petitioner waived his right to collaterally attack the issue of the taking of the statement of the two girls when he failed to object to the introduction of the testimony at the trial.

This court is of the opinion that only one serious question is before it. Consequently, the issues numbered 2, 3, and 4 above will be disposed of without a lengthy discussion. The petitioner contends that he is entitled to the writ because the police did not inform him of his constitutional rights when he was arrested. This contention is without merit. The petitioner made no statement that was damaging to him, so the warning that anything he said could be used against him and his right to remain silent are not brought into play. Quite obviously there is no prejudice to the petitioner. See, Homan v. Sigler, 278 F.Supp. 201, 203 (D.Neb.1967); Sheldon v. Nebraska, Civ. 1196L, filed on October 23, 1967. In regard to the failure of the police to inform the petitioner that he was entitled to counsel, it must first be stated that the petitioner was well aware of his right to counsel, at least at some stage of the proceedings, because he testified in this court that after his arrest he repeatedly requested that he be taken to the police station where he could call counsel. In addition, prior to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) it was not thought necessary to have counsel present at pretrial confrontations for identification. See, Stovall v. Denno, 388

U.S. 293, 299–300, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The writ cannot issue on any of these grounds.

■ The petitioner also contends that the prosecutor introduced evidence in an attempt to prejudice the petitioner without the petitioner being able to counteract the evidence because the witnesses were unavailable. A deputy sheriff testified that he had received subpoenas for Diane John and Vicky John at 4807 Saratoga Street, but that the subpoenas could not be served at that address and had not been served. Captain Shears, another sheriff's officer, testified that he had interviewed Diane John and Vicky John and obtained statements from them as part of his investigation. The petitioner argues that the inference is that the two girls implicated the petitioner. The Nebraska Supreme Court held that the argument was speculative, and, though the evidence may have been irrelevant, the admission was not prejudicial. That court also noted that the petitioner had failed to preserve the error. This court is of the opinion that the error was harmless, Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and can assert such beyond a reasonable doubt. Thus, we need not decide whether the petitioner waived his right to assert the claim here.

■■ So far as the questions raised under the issue numbered one are concerned, two of them can be disposed of by citation of recent United States Supreme Court decisions. On the basis of *Wade, supra,* 388 U.S. at page 222, 87 S.Ct. at page 1930, this court holds that the petitioner was not deprived of his right to assert his privilege against self-incrimination. The Court stated:

"We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. It is no different from compelling Schmerber to provide a blood sample or Holt to wear the blouse, and, as in those instances, is not within the cover of the privilege."

It is true that in the same case the Court held that the right to counsel extends to any critical confrontation by the prosecution where the results might well determine the outcome of the trial and derogate from the defendant's right to a fair trial; but in a decision handed down on the same day, Stovall v. Denno, *supra,* 388 U.S. at page 300, 87 S.Ct. 1967, 18 L.Ed.2d 1199 the Court held that *Wade* is not to be applied retroactively. The operative date is June 12, 1967. Petitioner was tried and convicted prior to that date. Nor does it matter that his case had not become final until after the decision in *Wade,* for the Court held in *Stovall* that it was not distinguishing between cases final at the time of the *Wade* decision and cases at "various stages of trial and direct review." Consequently, the petitioner herein was not denied counsel at a critical stage and the writ cannot issue on this ground.

■ The last question raised by the petitioner is more serious. In effect, he raises the same issue that was raised in *Stovall, supra,* 388 U.S. at pages 301–302, 87 S.Ct. at page 1972, and that is:

"[W]hether petitioner, although not entitled to the application of Wade * * * is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law."

The Court stated that this inquiry was a recognized ground of attack upon a conviction independent of any right to counsel claim. The Court continued to say that, "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it", and in that case excused the confrontation between the witness and the petitioner standing alone as being imperative under

the circumstances. The determination must be made as to whether the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law. In Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402, April 1, 1969, the Supreme Court had occasion to find that line-up procedures therein violated the due process clause. In *Foster*, the witness for the prosecution participated in three line-ups before he was able to make an identification. In the first line-up the petitioner stood out because of his height and because he was the only one wearing a leather jacket similar to the one the robber had worn. This did not lead to a positive identification, so the police then permitted the one-to-one confrontation between petitioner and the witness. After the one-to-one confrontation the witness could only give a tentative identification. Several days later another line-up was arranged and this one finally produced a positive identification. The petitioner, however, was the only person who had appeared in both the first and last line-up. The Court stated, 89 S.Ct. at page 1129:

"The suggestive elements in this identification procedure made it all but inevitable that David would identify petitioner whether or not he was in fact 'the man.' In effect, the police repeatedly said to the witness, *'This is the man.'* See Biggers v. Tennessee, 390 U.S. 404, 407 [88 S.Ct. 979, 980, 19 L.Ed.2d 1267] (dissenting opinion). This procedure so undermined the reliability of the eyewitness identification as to violate due process."

The Court continued to say, 89 S.Ct. at page 1129, that:

"In the present case the pretrial confrontations clearly were so arranged as to make the resulting identifications virtually inevitable."

Another case that held a confrontation procedure to be violative of due process was Palmer v. Peyton, 359 F.2d 199 (4 Cir. 1966). The *Palmer* case is, perhaps, more shocking than *Foster*. (Identification by voice alone under highly suggestive circumstances. The witness had been raped.)

In the present case, the petitioner was identified by two brothers, Allen and Brian Kerr. The transcript indicates that the Charles Trofholz home was burglarized at about 4:00 in the afternoon of September 26, 1966. The day was dark and cloudy and lights were needed inside the house. (Tr. p. 6) At approximately 4:05 P.M. Allen Kerr, age 11, finished doing his homework and went next door to the Trofholz house in order to play football with one of the Trofholz children. As Allen approached the front door, he saw a man's head and part of his body come out of the front door of the Trofholz house (Tr. pp. 32, 33). The man saw Allen and jumped back inside the house. At the time he saw the man he was about seven to eight feet away. Allen determined that the man left by the back door and saw him trot along the east side of the house, turn down a street, and get into a Plymouth automobile and drive away. As he saw the man trotting along the east side of the house, Allen was about fifty feet away from him.

Allen then went home to tell his family what he had seen. A few minutes later, he and his brother Brian saw the Plymouth pass in front of the Trofholz home and Allen identified it for Brian. Brian got on his motor bike and about two to two and one-half minutes later he saw the car. At the time he observed the car again it was stopped. He memorized the license, observed the face of the driver, and then continued on with his motor bike. He subsequently wrote down the license plate.

The petitioner was arrested that same evening in another part of Omaha and he was returned to the scene of the alleged burglary. When he was arrested he was in the company of another individual who was also arrested. The two of them were in the back seat of the police car when they arrived at the scene. The car was unmarked. Two officials

were seated in the front seat; they were not in uniform. It was completely dark at this time. Allen Kerr testified that he had first seen and recognized the petitioner while he was seated in the back seat of the car (Tr. p. 59 and p. 63). He testified that he independently pointed out the man and that that man was the petitioner. He testified that after he had identified petitioner while he was seated in the car, the officers then took the petitioner from the car and placed him by himself in front of the headlights of the car.

Brian Kerr, who was sixteen, testified that the sheriff's officers asked him to make an identification. He testified that when he went outside to do so the petitioner was seated in the car and he thought he recognized him, but in order to make certain, he asked to go around to the other side of the car. He, like his brother before him, identified the petitioner as the man he had seen that afternoon. Brian also testified that he made an independent identification (Tr. pp. 83 and 89). The individual that had been arrested with the petitioner was not identified and he was subsequently released.

The petitioner maintained that he was innocent throughout the proceedings before this court. At the trial he presented witnesses, including his mother, brother, and a close friend, who, if believed by the jury, completely supported his claimed innocence. This court is of the opinion that the confrontation procedure in the present case did not violate the petitioner's guarantee of due process of law. This court does not think that the procedure was so unnecessarily suggestive and conducive to lead to irreparable mistaken identification. The identification by the Kerr brothers was properly before the jury and it was for the jury to determine the credibility of their testimony. See, *Foster, supra*, 89 S.Ct. at page 1128, n. 2. The petitioner testified at his hearing in this court that he thought that he heard one of the sheriff's officers, after Allen Kerr had been unable to make a positive identifi-

cation, tell the Kerr boy that the petitioner either was or was not the man he had seen earlier in the day and that he wanted the boy to make up his mind so that they could get in out of the rain. There is no other evidence to support this allegation. Allen Kerr testified specifically that he made an independent identification.

While this court has now held that the confrontation procedure in the present case was not violative of due process of law, it should also mention that the rule announced in *Wade* may not cover situations such as the present one. In Russell v. United States, 37 LW 2246, decided January 24, 1969, Chief Judge Bazelon held that on-the-scene confrontation, at least under the facts in *Russell*, were not covered by *Wade*. He noted first that *Wade* and *Gilbert* covered post-indictment line-ups, and he stated that the Court was evidently focusing primarily on the routine line-up and show-up procedures employed by the police to obtain evidence for use at trial. He stated that in the typical case where counsel had been obtained and time was not a factor, the Court could not find any countervailing policy considerations against the requirement of the presence of counsel. He then continued with a discussion of *Russell*.

"The present case, however, involves an immediate on-the-scene confrontation at 5 o'clock in the morning when there would necessarily be a long delay in summoning appellant's counsel, or a substitute counsel, to observe a formal lineup. Such delay may not only cause the detention of an innocent suspect; it may also diminish the reliability of any identification obtained, thus defeating a principal purpose of the counsel requirement. * * *

"Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * * *.' This probability, together with the desirability of ex-

peditious release of innocent suspects, presents 'substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject. We therefore conclude, with some hesitation, that Wade does not require exclusion of [the] identification."

This court does not hold nor intimate that, if necessary for decision, this court would determine that the present case falls under the rationale of *Russell*. It does, however, point out that in the minds of some federal judges the *Wade* decision may not be as broad as its language might indicate.

This court has held that the *Wade* decision is not applicable to the present case and that the confrontation procedure involved in this case did not violate the petitioner's right to due process of law.

It is therefore the order of the court that the petitioner's application for a writ of habeas corpus be and the same is hereby overruled and denied.