**STATE of Maine**

v.

**Raymond J. BUTLER.**

Supreme Judicial Court of Maine.

Aug. 29, 1969.

Foahd J. Saliem, County Atty., Augusta, for plaintiff.

Frank E. Southard, Jr., and David D. Horn, Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal from judgment of conviction for robbery, which appeal is centered upon denial of a motion to suppress evidence of

pre-trial identification of the accused in the absence of defense counsel and subsequent admission of in-court identification of the accused, allegedly contrary to constitutional requirements.

The fact finders were justified in determining that at about 8:20 p.m. on the evening of March 29, 1968, a young man without hat, with a handkerchief over his mouth or mouth and lower part of his nose, which nose was described as long and "not very straight" and whose hair was brownish or auburn, entered the office of a Church credit union in Waterville and at gunpoint forced the Manager, alone at the time, to surrender the paper money at hand, the amount of which is alleged in the indictment to have been $524.00. The money was taken, the telephone torn from the wall and the visitor departed, all occurring in three to five minutes. The visitor was under the observation of the Manager at all times.

As soon as the Manager heard the outside door of the building close, he drove to the police station arriving there at about 8:35 p.m. and reported the incident. The description given by the Manager as reported by police witnesses varies in no significant degree. The police record made of the robbery report given by the Manager upon his arrival at the police station reflects the description of the assailant as a man in his early 20's, 5 feet 10 inches to 6 feet in height, weighing approximately 160 pounds, with light brown hair combed down on the sides. Recollections of officers of the description given by the Manager, give the assailant's height as about 5 feet 8 inches, weight about 170 pounds, with auburn hair, or light brown hair, and wearing a tan trench coat or a tan three-quarter length coat.

In the victim's testimony, both on the motion to suppress and at trial, he stated that his assailant's eyes and "rich auburn brown" hair and nose impressed him, the nose because it was similar to his, the witness', and "not a very straight nose."

Shortly after his arrival at the police station, a police Captain showed the Manager 12 police photographs of uniform size of 10 young males, each print containing a front and profile view of the subject and the Manager was asked to examine them to see if he could recognize anyone. Eleven of these photographs had identifying data on the reverse side, the 12th did not, and in the photographs each subject was wearing an identifying tab labelled Police Department, Waterville, Maine, a date and a number. The Manager was warned to examine only the front of the prints, which he did.

The police officer who submitted the photographs to the Manager testified, at the hearing on the motion to suppress, that the Manager picked out the photograph of the person who robbed him commenting that on the night of the incident the subject's hair was shorter than that shown in the picture.

The Manager testified relative to his examination of the photographs that when, among the 12, he came to the one of the accused, he covered the photograph by placing one hand below the nose in the picture and one hand covering the hair in the picture to obtain the eyes-nose-forehead view, and that he "felt it was the man" and would like "to observe the person in the flesh."

An examination by the presiding Justice and the jury of these photographs would justify them in concluding that the eyes, nose, and lower forehead appearance of the accused is distinctive.

The police were aware that the person whose picture the Manager had chosen was due among others to report to a Probation Officer at the City Building on the following Wednesday, April 3, 1968. On that day the Manager was requested by phone to come to the City Building and upon his arrival he was asked to go through the corridor, off which the Probation Officer's interview room opened, and see if he recognized anyone. The Manager did so. There were only two people in the room, neither

of whom the Manager knew, but there was notable difference in the size of the two men and from a back and profile view of the smaller man the Manager returned to the police office on another floor and told the Chief "that is the man." The Chief suggested that the Manager return to the corridor outside the room referred to and wait until the subject emerged, which he did. While the Manager was waiting, a police officer came into the corridor and when the accused came out of the office, the police officer engaged him in conversation. At this time the Manager observed the accused at close range and reported to the Chief that he was "satisfied that was the man." An arrest warrant was forthwith sought and an arrest was made later that day.

At trial the in-court identification occurred, after the witnesses testified about his examination of the police photographs, in the following language:

"Q Did you look at those photographs?

"A Yes, sir, I did.

"Q And did you see someone in those photographs that looked familiar?

"A Yes, sir, I did.

"Q Do you see anyone in this courtroom—

"A Yes, sir, I do.

"Q Would you indicate who?

"A This gentleman sitting down by the defense table."

At this point objection was made by defense, which objection was overruled, and a finding of guilt, upon all the evidence, was ultimately made.

The ground of the objection was not expressed but by reason of the position taken by the accused on the motion to suppress it is clear that the objection was grounded upon absence of counsel at the pre-trial "confrontation" between the victim and the suspect, the presence of which counsel allegedly is guaranteed by the Sixth Amendment to the Constitution of the United States and its counterpart, Article I, Section 6 of the Constitution of Maine.

The issue is expressed in appellant's brief in the following words:

"Whether the pre-trial identification and courtroom identification consequent thereto are admissible where the pre-trial identification was made in the absence of counsel and without notice to defendant or his attorney."

The limitation of appellant's attack is pointed out for, as noted in Trask v. State, Me., 247 A.2d 114, 116 and footnote, the in-court identification subsequent to out-of-court identification has been subject to attack not only under the constitutional "right to counsel" clause, but the "due process" clause as well.[1] The appeal here is centered on the alleged deprivation of the presence of counsel.

The quick answer to appellant's contention is that he is over-reading the "right to counsel" cases. In the words of *Davis, supra,* [1] page 951, "(t)he problem here arises from expressions in the opinions in

1. "Right to Counsel" attack, see United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (all June 12, 1967); United States v. Davis, 399 F.2d 948 (2 C.C.A. July 17, 1968, cert. den. Dec. 9, 1968, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449); and Rivers v. United States, 400 F.2d 935 (5 C.C.A. Sept. 16, 1968).

"Due Process" attack, see Stovall, *supra,* Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (both March 18, 1968); Clemons v. United States, 408 F.2d 1230 (D.C.Cir. Dec. 6, 1968, considering en banc Clemons, Clark and Hines on criminal appeals); and Gross v. United States, 408 F.2d 1297 (D.C.Cir. Feb. 19, 1969).

these cases which are contended by appellant's counsel to outrun their facts."

In *Wade* and *Gilbert* the out-of-court identification (confrontation) occurred after the accuseds had been arrested, charged and represented by counsel; in *Stovall* after the arrest and arraignment and pending the employment or appointment of counsel; in Rivers after the arrest and the lapse of a "significant" period of time, which negated any emergency confrontation. It is implicit that the Courts considered the confrontations as a "critical stage" of the prosecution.

None of these elements, upon which constitutional right to counsel was premised in the cited cases, are here present.

The case was clearly within its investigatory stage, the appellant had not been accused within the rule of *Escobedo* (378 U.S. 478, 84 S.Ct. 1758, [7] 1765, 12 L.Ed. 2d 977). His freedom of action had not been curtailed in any way related to the alleged robbery within the rule of *Miranda* (384 U.S. 436, 86 S.Ct. 1602, 1630 [66, 67] 16 L.Ed.2d 694). The so-called confrontation was instigated not by the police, but by the victim. No warrant for arrest was sought until after the confirmed identification by the victim. It was not a critical stage of the prosecution. No prosecution had been initiated.

There is no present constitutional or social obligation to extend the holdings in the Wade-Gilbert-Stovall trilogy beyond their facts.

The Circuit Court cases of *Rivers* and *Davis* (footnote) cited by appellant have not done so and *Davis* which involved a prearrest confrontation, as here, and as to which the Supreme Court of the United States denied certiorari on December 9, 1968 (393 U.S. 987, 89 S.Ct. 465, 21 L.Ed. 2d 449) supports the conclusion to which we come.

Appeal denied.

TAPLEY, J., sat at argument but retired before the opinion was adopted.