**James R. SEWELL, Petitioner,**

v.

**Harold CARDWELL, Warden, Respondent.**

**Civ. A. No. 70-105.**

United States District Court, S. D. Ohio, E. D.

April 28, 1971.

James Kozelek, Columbus, Ohio, and Jerry Gordon, Cleveland, Ohio, for petitioner.

Paul Brown, Atty. Gen. of Ohio, and James L. Hoover, Asst. Atty. Gen., for respondent.

## OPINION AND ORDER

KINNEARY, District Judge.

Petitioner, a state prisoner, brings this action for a writ of habeas corpus under the provisions of Title 28, United States Code, Section 2241(c) (3). This matter is before the Court on the petition, return of writ, and briefs of the parties. The Court also has before it a transcript of petitioner's trial in the Common Pleas Court of Cuyahoga County, Ohio. Counsel for the petitioner and respondent have agreed that an evidentiary hearing is not necessary. The Court finds that factual issues are not in dispute; consequently no evidentiary hearing is required under Townsend v.

Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

Petitioner has exhausted his state court remedies as required by Title 28, United States Code, Section 2254.

The sole issue for determination by this Court is whether or not the pretrial identification procedures to which petitioner was subjected deprived him of his Fifth, Sixth and Fourteenth Amendment rights.

The facts as disclosed by the trial court record are as follows:

In the early morning hours of June 28, 1966, a number of young college students were sitting on the patio of Camilla Burby's home at 2606 East Overlook, Cleveland Heights, Ohio. The home was next door to the residence of Mr. and Mrs. Charles Gard, 2604 East Overlook.

At approximately 12:15 a. m., the individuals on the patio heard the breaking of glass. A short time after this occurrence the same sound was heard once more. Upon hearing the sound of glass breaking a second time, the group on the patio got up and started to walk down the Burby driveway toward the street. Four of the people were Camilla Burby, Michelle Day, Brent Murphy and Martin Mullin.

As they walked down the driveway, they observed a man running from the front of the Gard house to an automobile parked on East Overlook directly under a street light. Someone yelled at the individual to stop and part of the group gave chase. The man turned and looked at them, got into his car and drove away. However, Camilla Burby was able to obtain the license number of the automobile (R. 214). Michelle Day and Martin Mullin were able to obtain a partial reading of the license plate (R. 147, 176, 322). In addition, Mullin and Brent Murphy noticed a sticker on the car and Murphy identified the sticker as an "Evans sticker" (R. 287–288, 301–310, 322). Mullin also identified the car as a turquoise station wagon, vintage early 1960's (R. 321).

During the course of the chase, an explosion occurred in the Gard home. The police were then called. When the police arrived, they questioned the witnesses and the Gards. Based on this information, they arrested the petitioner, James Sewell.

The arrest of Sewell took place that same morning at approximately 4:30 a. m. at his home, although other police officers were present outside Sewell's home prior to the arrest (R. 635–638). Sewell was then taken to the police station.

At approximately 6:00 to 7:00 a. m. that morning, the four witnesses previously mentioned went to the Cleveland Heights Police Station. After identifying the petitioner's automobile, they were all taken to a room in the police station which adjoined a parking lot. While they were in this room they were told to "look out the window" (R. 122, 218, 355).

The witnesses testified that they observed a police officer and a man walking across the parking lot. They then identified the man, James Sewell, as the man they had seen a few hours earlier running from the Gard home. At this time petitioner was not wearing glasses and was clothed in a green or tan shirt.

Later that same day, a lineup was held at the police station. Sewell and approximately four other men were in the lineup. The aforementioned witnesses each observed the lineup through a one way mirror at separate times and each one of them picked out Sewell as the man they had seen at the Gard home.

All four witnesses identified petitioner in court as the man they had seen running from the Gard home just prior to the explosion. Petitioner was convicted of placing and exploding a bomb in violation of Ohio Revised Code, Section 2907.081.

The one man confrontation in this case took place prior to the decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263,

87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Those decisions are not retroactive. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1968).

█ The specific question presented to this Court is whether or not the one man show-up which·took place in the parking lot was so unnecessarily suggestive and conducive to irreparable mistaken identification that the petitioner was denied due process. Stovall v. Denno, *supra*. Petitioner's claim must be evaluated in light of the totality of surrounding circumstances. Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247. Due process is not always violated when the police fail to assemble a lineup but instead conduct a one man show-up. Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968). See also, United States v. Black, 412 F.2d 687, 691 (6th Cir. 1969).

In the context of this case, the Court focuses on the following circumstances as being dispositive of petitioner's claim.

### I.

There was no need for the suggestive confrontation employed in this case; *cf.* Stovall v. Denno, *supra*. This case is clearly to be distinguished from Jackson v. United States, 134 U.S.App.D.C. 18, 412 F.2d 149 (1969) in which the suspect had been shot and was under treatment in a hospital. Here there was nothing to prevent the police from waiting a short time until a lineup could be assembled.

### II.

The witnesses' opportunity to view the suspect at the time of the explosion did not provide an independent basis for the in-court identification. Nor did it provide an independent basis for the identification at the properly constituted lineup held after the one man show-up.

At the time of the explosion, the witnesses estimated that they saw the suspect's face for between two to seven seconds (R. 121, 232, 320). The suspect was from ten to thirty feet away from the witnesses (R. 120, 227, 281). The only illumination on the suspect at the time of the crime came from a streetlight located immediately above the suspect when he stopped and faced those chasing him. Had the witnesses furnished the police with an accurate description of the suspect prior to the one man show-up, that would have been some evidence that the witnesses had an independent basis for the in-court identification.

The trial record does not indicate what description was given to the police when they came to the .scene of the bombing. The trial record does show that the recollection of one of the witnesses as to the escaping bomber's features did not coincide with the features of the man she later identified. Camilla Burby testified that the man she saw walking across the parking lot appeared to be older than the man she had chased the night before (R. 220). She also testified that his hair was lighter in color and perhaps shorter than the hair of the suspect she observed in the one man show-up (R. 247). Nevertheless, Miss Burby testified that the suspect's other features were as she remembered them from the time of the chase. However, there were no scars or distinguishing marks. "It was like any other face" (R. 226).

The slight opportunity which the witnesses had to view the suspect, as well as the limited illumination, distinguish this case from those on which the respondent relies. Jackson v. United States, *supra*, differs from this case because of the "necessitous circumstances" and because the witnesses had two opportunities to observe the robbers inside a well lighted store. In United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2d Cir. 1969) the robbery occurred in daylight, in a well lighted store, and the suspect was undisguised. The witness viewed the suspect for five minutes while the offense was in progress and furnished a detailed description to the police which tallied with the characteristics of the accused. In Fitts v. Unit-

ed States, 406 F.2d 518, 519 (5th Cir. 1969) the witness had talked face to face with the defendant for ten minutes before the theft was perpetrated. In United States ex rel. Anderson v. Mancusi, 413 F.2d 1012 (2d Cir. 1969), the purse snatching took place in daylight and the identification took place less than an hour after the crime. Finally, in United States ex rel. James v. Follette, 301 F. Supp. 569 (S.D.N.Y.1969), the witness had an opportunity to see and converse face to face with his assailant for over three hours.

### III.

The manner in which the one man show-up was conducted in this case added to the suggestiveness inherent in any one man show-up. All four witnesses were brought to the Cleveland Heights Police Station at 6:00 A. M.—just six hours after the bombing. The four were first asked to identify petitioner's car and then while the four were waiting in a room in the station, a police officer told them to look out the window into the parking lot. The petitioner was being paraded back and forth past the window by a policeman. The suggestiveness of this show-up is apparent. The witnesses had their attention called to one who was obviously a suspect in the bombing. Moreover, the fact that the suspect was viewed by the witnesses as a group rather than individually also undermines the validity of the identification. See, Jackson v. United States, *supra*, where the Court mentioned the fact of individual viewings as support for its conclusion that there was an independent basis.

■ For the above reasons the Court finds that the pretrial identification procedures used in this case so tainted the in-trial identification as to deny petitioner's right to due process of law. Foster v. California, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

Furthermore, since almost the entire case against the petitioner consisted of the testimony of the four identification witnesses, it cannot be said that the error is harmless. See, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

WHEREUPON, the Court determines that the petition is meritorious and it is therefore granted.

It is hereby ordered that the petitioner be remanded back to the Common Pleas Court of Cuyahoga County, Ohio for such further proceedings as may be deemed necessary and proper in accordance with the law.

It is further ordered that if no action is taken by the State of Ohio or the County of Cuyahoga within sixty (60) days from the filing of this order, petitioner's release shall become final and unconditional.