Edward T. Sullivan, J.
By the above indictment, Joseph E. Bilinski has been charged with robbery in the second degree, and in count 2 thereof with the crime of grand larceny in the third degree. These charges arise from an apparently armed robbery of the Mac Finn Drug Store in Saratoga Springs, New York, on or about June 29, 1971. At the time of the criminal incident, early evening at about 6:45 p.m., all occupants of the store were forced to lie on the floor, where they were bound with adhesive tape. They were not blindfolded, nor were any tapes placed over their mouths. The robber had a full face with a mustache and had a handkerchief over the bridge of his nose, concealing the lower part of his face most of the time; and also wore a broad-brimmed hat pulled down to about the middle of his forehead most of the time.
The above-named defendant was arrested for the robbery and, after a preliminary hearing held in August, 1971, City Court, Saratoga Springs, N. Y., he was indicted as aforesaid. The indictment was transferred by Supreme Court to Saratoga County Court for trial or other disposition. At the October, 1971 Criminal Term of this court, the case was adjourned to the December, 1971 session of Saratoga County Criminal Court to allow time for defense motions. Defendant moved to suppress under CPL 710.20 the prospective testimony of the witnesses Frank Wroblewski and Shirley Calligan, designated as identification witnesses by the District Attorney in a notice therefor pursuant to statute given to the defense attorney. Mrs. 'G-alligan was a clerk in the drug store, and was one of the store occupants who was bound with adhesive tape. Mr. Wroblewski was near the crime site and saw a person leave the store by the ■side door, cross the street and enter a white automobile, which he drove away. The suppression hearing was held in a closed court room at the County Court House in the Village of Ballston Spa, N. Y. on November 12, 1971. The witnesses heard at this hearing were Mrs. G-alligan and Mr. Wroblewski. The above-named defendant, Joseph F. Bilinski, was present but did not testify.
The hearing clearly established that both witnesses, at the request of the Saratoga police, went to police headquarters at *542 9:00 a.m. on the morning following the criminal incident, separately viewed five or six photographs of persons adorned with large mustaches, and each separately picked out two photographs of the defendant. They were each advised of his name by the police and informed that Joseph F. Bilinski was the person suspected by the police to be the criminal. Further, they were each advised by the police that the police expected Joseph F. Bilinski to be soon approaching the same building in which the prospective witnesses were waiting, since the police were aware that Joseph F. Bilinski was scheduled to appear in Sara-toga Springs City Court that morning in answer to another charge (public intoxication). G-alligan watched through a window on Lake Avenue side of the police station. Wroblewski stood on the sidewalk of Lake Avenue about 10 yards up toward Broadway from the doorway to the detective’s office of police headquarters. The above-named defendant, while the witnesses were watching, did leave a law office on the opposite side of Lake Avenue and walk across the street with attorney Edward McMahon and enter the Saratoga Springs City Hall building. Attorney McMahon represented Joseph F. Bilinski in the case pending against him that morning in City Court. Both witnesses viewed the defendant while he was crossing the street with Mr. McMahon, and each prospective witness was able to distinguish the defendant from his then attorney, and each prospective witness had separate reasons for doing so.
The defendant rightfully contends that the practice of showing suspects singly to persons for the purpose of identification and not as a part of a line-up has been widely condemned. The defendant further contends that such confrontation is now illegal, and that since it was done in this case, the eyewitness type identification of the robber at the crime site by the prospective witnesses thereby became so tainted by the one-to-one confrontation that, as a matter of law, the court should suppress their identification testimony and prohibit them from giving identification testimony in court at the trial of the above-named defendant for the charges pending in the above indictment. After the trilogy of cases on the subject of identification reported together by the United States Supreme Court in Wade, Gilbert, and Stovall in 1967 in 388 U. S. at pages 218, 263 and 293 respectively, there has been a rash of defense motions to suppress prospective identification testimony, both pretrial and at trial. As stated in Stovall (p. 297) the exclusionary rules promulgated by the United States Supreme Court were fashioned to deter improper conduct on the part of law enforcement officials which might lead to mistaken identifica *543 tions: The Court of Appeals of New York has also spoken out on the identification question in the wake of the above trilogy of United States Supreme Court cases where the issue of identification was before it in pending appeals.
Criminal procedure laws in this State have permitted, rather than proscribed, pretrial identification by witnesses of the defendant accused by the People of the State of New York. (See section 393-b of the former Code of Criminal Procedure, permitting testimony of previous identification; and section 542 of the previous Code of Criminal Procedure under which appellate courts may treat technical errors or defects as harmless error not affecting the substantial rights of the defendant.) CPL 60.25 and 60.30, effective September 1, 1971, provide for identification by means of previous recognition, in absence of present identification ; and identification by means of previous recognition, in addition to present identification. These sections in the current CPL, referring to a previous recognition after the criminal offense but prior to trial provide that it must take place ‘ ‘ under circumstances consistent with such rights as an accused person may derive under the constitution of this state or of the United States ”. This proviso obviously recognizes the privileges and immunities mandated by the Wade, Gilbert and Stovall decisions of the United States Supreme Court and the pronouncements of the New York Court of Appeals.
In People v. Brown (20 N Y 2d 238, 243-244) the majority of the New York Court of Appeals declared that, “ absent ‘ imperative ’ circumstances necessitating resort to such a procedure, the practice of having a witness secretly view, for identification purposes, only the very suspect whom the police have taken into custody * * * can be 6 so unnecessarily suggestive and conducive to irreparable mistaken identification ’ as to amount to a denial of due process of law ”. In Brown, the witness viewed the defendant and a codefendant, both black, and a white detective through a one-way mirror. The identification testimony of the witness, the victim, was allowed to stand. The court said (p. 244): “Accordingly, the pretrial identification, impermissible though it be, may be disregarded as harmless error (Code Crim. Pro., § 542). ” In People v. Ballot (20 N Y 2d 600) after quoting the above from Brown, .stated (p. 606) that “ once the pretrial identification procedure is shown to be impermissible and improper, any in-court identifications, though not per se excludable, are not to be received in evidence ‘ without first determining that they were not tainted * * * but were of independent origin ’. ’ ’ The court went on to say that the trial1 ‘ court should, in the first instance — and out of the presence of the
*544 jury — give the People an opportunity to prove by 1 clear and convincing evidence ’ that the in-court identification was based upon observations of the suspect other than the show-up identification. ” The in-court identification testimony is admissible if the prosecution establish, by clear and convincing proof, that it is based upon observations of the suspect other than the police station identification. In People v. Logan (25 N Y 2d 184, 194) the New York Court of Appeals cites the United States Supreme Court cases of Wade, Gilbert and Stovall, along with Biggers v. Tennessee (390 U. S. 404) as well as its own decisions in Brown and Ballot, as well as People v. Moore (23 N Y 2d 816), and states: “It is quite evident that the Wade-Gilbert standards were not designed to frustrate good police work which produces the prompt or instantaneous and therefore the most reliable identification of culprits. Moreover, when the identification focuses on the defendant, it will be important, most of the time, to analyze whether the focusing is due to suggestive police action or arrangements or, instead, emanates from the witnesses. It is only where the suggestion is, in one form or another, verbally or circumstantially, put to the witness that the procedure is condemned as violative of due process.”
This court finds that the identification testimony by the prospective witness, Shirley Gralligan, of the person who committed the offense at the drug store on June 29, 1971 in Saratoga Springs, New York, was neither strengthened nor weakened, nor was influenced in any way by the exhibition to her through the arrangements of the Saratoga Springs police of the above-named defendant as he walked across Lake Avenue in Saratoga Springs, New York, with his then attorney, nor when she saw him again in City Court early on the morning following the criminal offense. This court further finds that the identification testimony of the prospective witness, Frank Wroblewski, was not strengthened nor made more positive by the impermissive and improper exhibition of the defendant, Joseph F. Bilinski, as he walked across the street from the law office to the City Hall in Saratoga Springs, New York, early on the morning following the criminal incident. Both witnesses emphatically stated under oath that their identifications were based upon what they had observed at the site of the crime and near the site of the crime, that such identifications were not affected by the exhibition to them of the defendant on Lake Avenue the morning after the criminal offense. The witness Gralligan could not understand why such exhibition of the defendant to her should affect her ability to give identification testimony in that the defendant, when she saw him on Lake Avenue, was without *545 mustache, was dressed differently, and wore his hair differently from the person she saw at the crime site. The witness, Frank Wroblewski, who was not in any way victimized at the crime site by the criminal offense, and who had a view of the culprit leaving the crime site without his hat or handkerchief disguise, saw him enter a white automobile, and recalled a part of the vehicle’s registration plate number, testified that his identification was based upon what he had observed at or near the scene of the crime and was not influenced, qualitatively, by the exhibition to him of the defendant on Lake Avenue near the police station on the morning following the criminal offense. This witness quite honestly admitted .that the exhibition of the defendant, whom he has identified positively as the culprit, was aided by the street exhibition of the defendant as aforesaid, in that, as he testified, it made it easier to remember what he had seen at the site of the crime.
This court further finds that the prospective in-court identification of the defendant by the witnesses G-alligan and Wroblewski emanates from the respective observations of each of these witnesses at or near the crime site, and such identifications are not based upon nor in any way influenced by the suggestions of the police officers, neither verbally nor circumstantially by the concededly improper exhibition of this defendant as a suspect to these witnesses, secretly, singly, and in violation of judicial guidelines for proper line-up procedures. This court holds that the circumstances here, though unnecessarily suggestive, were not conducive to irreparable mistaken identification so as to result in a denial of due process of law. They may be considered by the jury at the trial as elements of the totality of circumstances presented to it, along with the other evidence, for its factual determination of the proof of the criminal offense charged.
Motion denied.