**Larry Wayne SIMIEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–84–029–CR.**

Court of Appeals of Texas,
Waco.

July 18, 1985.

Ricky Sims, Teague, for appellant.

Latham Boone, III, Dist. Atty., David S. Barron, Asst. Dist. Atty., Anderson, for appellee.

OPINION

JAMES, Justice.

Appellant Larry Wayne Simien was tried before a jury for the offense of aggravated robbery alleged to have occurred in Leon County, Texas, on April 10, 1983. He was charged with having robbed one J.D. Shipp, a clerk in a convenience store in Oakwood, Texas, by threatening him with a hunting knife. Appellant was found guilty whereupon the jury assessed punishment at thirty-five years in the Texas Department of Corrections. The Appellant had one prior conviction, to wit, a five year sentence from Harris County for robbery by assault in 1974.

Appellant comes to this court upon two grounds of error as follows:

(1) The trial court erred in denying Appellant's motion for mistrial made in response to the State's witness' comment about Appellant's willingness to take a polygraph examination.

(2) The trial court erred in denying Appellant's motion to suppress in-court identification of Appellant because said identification was tainted by a suggestive post-arrest showup at which Appellant had not had counsel appointed nor had he waived his right to counsel, in violation of Appellant's right to due process.

We overrule both of Appellant's grounds of error and affirm the trial court's judgment.

■ We revert to Appellant's first ground of error, wherein the State's witness made comment concerning Appellant's willingness to take a polygraph examination.

At the commencement of the trial, Appellant filed a motion to suppress any reference to a polygraph test taken by Appellant, which motion requested the court to instruct the State's attorneys and their witnesses not to allude to, remark about or bring up in any manner the polygraph examination. The court granted the motion, which the State agreed was proper, and instructed the State to approach the bench before alluding to the polygraph examination in any manner.

The State's first witness was James B. Eldridge, Chief Deputy Sheriff of Leon County. On cross-examination by Appellant's counsel, the following exchange occurred between the attorney and witness Eldridge:

"Q. Okay, sir. Actually, Mr. Simien came over about May the 2nd to the Sheriff's office here in Centerville, did he not?

"A. Yes, sir, he sure did.

"Q. Turned himself in, said he heard that there was something out for him.

"A. No, sir, he didn't turn himself in.

"Q. What did he do?

"A. He came over and requested—you asked the question, sir. I'm going to answer it. He came over and requested a polygraph test."

Appellant's attorney objected to the witness' response, requested that the jury be instructed to disregard the answer and moved for a mistrial. The trial court sustained the objection, instructed the jury to disregard the answer ("having to do with anything dealing with a polygraph"), and overruled the motion for mistrial.

We do not believe any error is presented here because in our opinion the witness' answer complained of was directly responsive to Appellant's counsel's question, "What did he do?" It is true that the trial court had instructed the State's witnesses not to allude to or mention the polygraph examination; however, we must remember that the witness in question had also been sworn to tell the truth, the whole truth, and nothing but the truth. Appellant clearly invited this answer by the witness, and no error is shown.

However, in the event we are in error in holding that the witness' answer was responsive to the question propounded by Appellant's counsel, our Court of Criminal Appeals has held that where a witness gives an unresponsive answer which mentions a polygraph test but does not mention the results of such test, there is no error in failing to grant a mistrial where the objection is sustained and the jury is instructed to disregard. *Richardson v. State*, (Tex. Cr.App.1981) 624 S.W.2d 912; *Marini v. State*, (Tex.Cr.App.1980) 593 S.W.2d 709; *Reed v. State*, (Tex.Cr.App.1975) 522 S.W.2d 466; *Roper v. State*, (Tex.Cr.App. 1964) 375 S.W.2d 454. Appellant's first ground of error is overruled.

■ As stated above, Appellant's second ground of error asserts the trial court erred in denying Appellant's motion to suppress in-court identification of Appellant because said identification was tainted by a suggestive post-arrest showup at which Appellant had not had counsel appointed nor had he waived his right to counsel, in violation of Appellant's right to due process. We overrule this ground of error.

In order to evaluate this ground of error, we believe a review of the facts is necessary:

This offense took place in the early morning hours (shortly after midnight) of Sunday, April 10, 1983, at the Armadillo Country Store in Oakwood, Texas. A young man eighteen years of age by the name of J.D. Shipp was tending the store and was the victim of the robbery. Appellant and another man came in the store.

Shipp in his testimony described the Appellant as follows:

"Well, when he came in he had—of course, he had a knife in his hand, a hunter's knife, and he had blue overalls on with a white undershirt and he had a blue and white cap on and it was pulled down and the bill was turned up and he was approximately five foot eight, one hundred and sixty pounds and I would say about twenty-seven or twenty-eight years old." His testimony went on to the effect that Appellant was either a light-colored black or he might have been of Cuban origin; that he had a mustache or goatee. Shipp positively identified the Appellant in court as the man who robbed him, and further testified that his (Shipp's) identification of Appellant was made based upon what he saw that night and for no other reason.

When Appellant and his companion entered the store, Shipp was mopping in the back; however, he (Shipp) walked toward the counter at which point in time Appellant came in with a knife and ordered Shipp behind the counter and told him to give him all the money and "be quick about it." Appellant was about a foot away from Shipp until Shipp was behind the counter, and held the hunting knife six to eight inches from Shipp's face. Shipp further testified that the furtherest he got away from Appellant was two or three feet, because Appellant ordered him to find a bag to put the money in. When Shipp was behind the counter, Appellant held the knife just a few inches from Shipp's head and was shaking it when he ordered Shipp to get the money. Shipp testified that if he had not given Appellant the money that he was afraid Appellant would stab or cut him with the knife. Appellant took the money as well as Shipp's billfold, and he (Appellant) and the other man left the store. Shipp had from five to eight minutes in which to observe the Appellant during the robbery, and saw him face to face. The lighting conditions were good inside the store. Before Appellant and the other man left the store, Appellant told Shipp not to go near the phone for five minutes or he would blow Shipp's head off.

After Appellant and the other man left the store, Shipp contacted the officers by telephone, and a few minutes thereafter James Eldridge, Chief Deputy Sheriff of Leon County, came to the store.

Eldridge testified that upon his arrival at the store, Shipp gave him the following description of the man who robbed him: "a somewhat yellowish-skinned man, dusty colored, about twenty-eight years of age, around five foot eight, weighed about a hundred and sixty pounds, short hair, with a mustache and a goatee, had on a white pull-over shirt and blue overalls and a cap."

Appellant was arrested on or about May 2, 1983, at the Sheriff's Office in Leon County, some three weeks after the robbery. Officer Eldridge testified that at the time of the arrest, Appellant had shaved off his mustache and goatee, but in all other respects he matched the description given him by Shipp immediately after the robbery.

At some time after the robbery and before Appellant's arrest, the Sheriff's office had Appellant's brother Joe Simien at the county jail, and J.D. Shipp was asked to come to the jail to see if Joe Simien was the man who robbed him. Shipp testified that he went to the jail and saw Joe Simien, but that Joe Simien was not the man who robbed him but that he "resembled" the Appellant. There was a conflict of evidence on this point, since Joe Simien testified that Shipp positively identified him (Joe Simien) as the robber, but then later changed his mind after talking with Appellant. Officer Eldridge testified that Shipp did not identify Joe Simien as the man who robbed him. Officer Eldridge testified that Shipp said that the man who robbed him was taller, thicker in the chest, and had wide shoulders.

On June 12, 1983, the court appointed a lawyer to represent the Appellant. At some time between May 2, 1983 (the date of Appellant's arrest), and June 12, 1983, Shipp was again asked to come to the county jail to see if he could identify the man who robbed him. Shipp was told "just to

go back in the jail and look around"; that the two men who robbed him were there. Shipp went back in the jail and saw Appellant and one Green. Shipp identified the Appellant and Green as the two men who robbed him. At the time Appellant was the only Negro in the jail.

At the commencement of the trial, Appellant filed a motion that an identification hearing be held out of the presence of the jury. The trial court granted this motion, and evidence to the effect hereinabove outlined was presented. Thereupon Appellant filed a motion to suppress the in-court identification of Appellant which the trial court denied.

The proceeding in the Leon County jail (at which Appellant was identified by J.D. Shipp as the person who robbed him) is normally referred to as a "showup." At the time of the showup, Appellant had not had counsel appointed for him, and had not waived his right to counsel; moreover, the showup was conducted in a manner that was impermissibly suggestive since Appellant was the only Negro in the Leon County jail at the time of the showup.

In *Cole v. State*, (Tex.Cr.App.1971) 474 S.W.2d 696 at page 698, our Court of Criminal Appeals said:

"Although identification procedure whereby suspects are viewed singly by a witness rather than as part of a lineup has been widely condemned, *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, [1972] 18 L.Ed.2d 1199 (1967), due process is not, however, invariably violated by such a procedure. See *Biggers v. Tennessee*, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267. Here again we note that each case must be considered on its own facts to determine the likelihood that a particular pre-trial confrontation resulted in irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, [971] 19 L.Ed.2d 1247."

It must be determined from a totality of the circumstances whether there has been a deprivation of due process. *Perryman v. State*, (Tex.Cr.App.1971) 470 S.W.2d 703.

In *Jackson v. State*, (Tex.Cr.App.1983) 657 S.W.2d 123 at page 130, the Court of Criminal Appeals said:

"Turning to the in-court identification, we observe that it is well-established that, even where the pre-trial identification procedure is impermissibly suggestive, in-court testimony of an identification witness will still be admissible as long as the record clearly reveals that the witness' prior observation of the accused was sufficient to serve as an independent origin for the in-court identification. (citing cases)."

In the case at bar, we believe the State has shown by "clear and convincing evidence" that the victim Shipp's in-court identification of Appellant was based upon observations made by Shipp of Appellant at the time of the robbery. From the recitation of facts hereinabove outlined it is clear that Shipp was not only an observant witness, but also had ample opportunity to observe Appellant when the robbery took place. See *United States v. Wade*, (1967) 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149. For those reasons we hold that Appellant's right to due process has not been violated.

Judgment of the trial court is affirmed.

AFFIRMED.