Chief Judge Desmond.
These appeals were argued on the same day and at least for purposes of contrast it will be useful to deal with them in a single opinion. The eases are not otherwise associated except that each conviction is for felonious possession of narcotic drugs and in each there was an alleged obtaining of the evidence by an illegal search without a warrant. The found facts as to the two searches are, however, so different as to produce opposite results in this court.
People v. Santiago
During the evening of January 4,1962 defendant Lee Santiago was arrested in an apartment in a building on St. Nicholas Avenue, New York City, without a search warrant or an arrest warrant. During the jury trial in Supreme Court, New York County, on the section 1751 (Penal Law) charge a motion to suppress was made, heard and denied. Defendant was convicted of felonious possession and was sentenced to 7% to 10 years. Appellate Division, First Department, unanimously affirmed without opinion and leave to appeal was granted.
The real question here, as distinguished from the question which will appear in the Martin case, is whether the search without a warrant was reasonable as being based on reliable information from an informer, keeping in mind that ‘ ‘ Substantiation of information can come either from the informer’s own character and reputation or from the separate, objective checking of the tale he tells ” (People v. Coffey, 12 N Y 2d 443, 452, and authorities cited therein).
*330 In the early evening three New York City police officers and a Federal narcotics agent went to the West 76th Street apartment of a woman named Elfman, a known drug addict, and told her that they had evidence of a sale of narcotics by her but promised her consideration if she would co-operate with the police. Responding to these pressures Miss Elfman admitted that she sold narcotics in a certain New York City neighborhood and stated that her source of supply was a woman named Lee who lived in apartment 24 at 723 St. Nicholas Avenue and whose alleged telephone number was given by Elfman to the officers. Elfman gave the officers quite a lot of other information about Lee, telling them where Lee got the narcotics and as to approximate amounts which Elfman bought daily from Lee, etc. Elfman said that she usually approached Lee in the latter’s pink Oldsmobile automobile at certain corners but that Elfman occasionally obtained the narcotics from Lee at apartment 24, 723 St. Nicholas Avenue. One of the officers testified that he knew Lee as a reputed seller and knew that she drove a pink Oldsmobile car. Checking with the telephone company he found that the phone number given to him by Elfman was listed to one Clifford Jones at the same address, 723 St. Nicholas Avenue. In the presence of this officer Elfman made two calls to that phone number. The first one was not answered but on the second call, with the officer listening in, Elfman introduced herself, called the person on the other end of the telephone ‘1 Lee ’ ’ and asked: ‘ ‘ Have you got any stuff? The person addressed as Lee replied that she did have it, told Elfman to come up but that she (Lee) would be leaving soon, and Elfman replied that she would be right up. Immediately Elfman and the officers went to 723 St. Nicholas Avenue, she having been directed by them to go to the apartment, arrange for a purchase but not to take the narcotics but to come out of the apartment door and if she had found narcotics there to give a signal to the officers waiting in the hall. After about a half hour Elfman came out, gave the signal by a nod of the head and all four of the officers pushed in through the partly opened door. Defendant Lee Santiago was standing in a door to a bedroom and when she saw the officers she threw on the floor two glassine envelopes containing a white powder. One of the city policemen put Lee Santiago under arrest, there was a search of the apartment and Lee Santiago admitted that *331 the glassine envelopes belonged to her and that they contained heroin. A woman, who was sitting on a bed and turned out to be a sister of Clifford Jones in whose name the apartment was rented, ordered the officers to leave. Instead they continued to search the apartment and requested her to move from the bed which she declined to do, whereupon they lifted her off the bed and found concealed between the spring and the mattress a considerable number of glassine envelopes, some of them filled with white powder. All of this white powder was later proven to be heroin. Defendant Lee Santiago told the officers that it all belonged to her, that Lucy Johnson was merely trying to protect Lee and that Lu'cy should not be arrested. All of this was established by ample proof. The defense, presumably rejected by the trier of the facts, was that this was a frameup and that the informer Elfman had, at the direction of the officers, hidden in the bed a package of narcotics given her by the police. The officers denied that there was any such frameup or conspiracy with Elfman.
This search and seizure was lawful if it was incident to a lawful arrest and the arrest was lawful if the officers had reasonable cause to believe that a felony had bgen committed and that the defendant had committed it (Code Grim. Pro., § 177). The presence or absence of reasonable cause depended on whether the officers in good faith believed that defendant was guilty of a felony and whether this belief rested on grounds which would induce an ordinarily prudent and cautious man under the circumstances to believe likewise (People v. Coffey, 12 N Y 2d 443, 451, supra; Brinegar v. United States, 338 U. S. 160). This boils down to an inquiry as to whether, from the information which they had, the officers had fair reason to believe before they entered the apartment that defendant feloniously possessed narcotics with intent to sell them (Penal Law, § 1751). We hold that such reasonable grounds existed. The officers not only knew Elfman as a narcotics user and seller but knew of defendant’s reputation as a seller. They had checked the telephone number given them by Elfman and found that It was the number of a telephone at the apartment address Elfman had given them. They listened in while Elfman identified herself and addressed the person at the other end of the line as u Lee ” and heard the conversation in which Elfman asked if *332 Lee had any ‘1 stuff ’ ’, was told that she had, and in which an appointment was arranged. By arrangement the officers went to the building with Elfman, stood out in the hall and when after a time Elfman came out and gave the prearranged signal they went in and found the narcotics. Appellant erroneously argues that an informer’s story cannot be the basis for reasonable ground of belief unless the informer has previously given information which has turned out to be true. However, that is only one way of testing an informer’s reliability. As the Coffey ease (12 N Y 2d 443, supra) makes clear, informers’ information can be used if it stands up under a reasonable amount of testing against other known facts. There was such checking and testing here.
The judgment appealed from should be affirmed.
People v. Martin
After a trial in Supreme Court defendant Rosalee Martin was convicted of felonious possession of a narcotic drug with intent to sell (Penal Law, § 1751) and sentenced to a term of imprisonment. Appellate Division, First Department, unanimously affirmed without opinion and leave to appeal here was granted. Several weeks before the trial a motion to suppress had been heard and denied by another Justice and the same evidence was objected to at the trial. The question for us is as to whether the search which resulted in the seizure of the narcotics was legal as incident to a lawful arrest and as to whether it should, therefore, have been suppressed.
We hold that the search was clearly illegal because without reason or necessity and without a warrant the officers acted on untested information from a person whose reliability was not otherwise confirmed and because they got to see the evidence by opening a roof skylight so they could come down the stairs and enter the apartment.
The search, made during the evening of May 2, 1962, was of an apartment at 30 Edgecomb Avenue, New York City. The officers swore that a city detective and a Federal narcotics agent discovered the evidence by pushing open a skylight,- coming down the stairs, looking through an open door and seeing narcotics. Earlier that same evening the city officers and Treasury agents had executed a search warrant at entirely different *333 premises on West 124th Street and had there arrested one Robert Void whom the oEcers admitted they never knew before. On the basis of some information which Void gave them, the oEcers then went to 30 Edgecomb Avenue, entered as above explained and saw the narcotics through the open door of an apartment. Later that same night defendant Rosalee Martin was arrested by these oEcers in still another apartment at 500 West 148th Street which was rented in her name. She was brought back to the Edgecomb Avenue place and charged with the felonious possession of the drugs which the oEcers previously had seen there. The oEcers testified that, after they had executed the search warrant at the unrelated premises and found evidences of narcotics violations there, they talked with Robert Void who told them that he owed 21 months’ parole and offered to help them since, so he told them, he knew some people who had a large quantity of narcotics which they cut up as soon as they got it and “ move[d] it right out again ”. One of the detectives told Void that if the information turned out to be accurate they would release him, otherwise they would lock him up. Void made, or pretended to make, inquiries and then told the agents that the narcotics were being cut up at that very time and at the Edgecomb Avenue premises and said that the occupant was a girl named Rose whose appearance Void described. Void told the oEcers also that the apartment was on the ground floor at the front of the building and that, since there would be a lookout in front, entry could not be made from that direction. Some of the oEcers stayed with Void and others went to the Edgecomb Avenue address. One of the detectives stationed himself on the street (apparently there was no lookout on duty) and the other two went to the roof of an adjoining building, crossed, forced the skylight open (which undoubtedly was a trespass) and went down into the building. According to their testimony, as they got down to the second-floor landing the door of the first-floor front apartment opened and defendant Rosalee Martin came out. She looked in the direction of the police and then ran out the front door leaving the apartment door open. Two of the oEcers looked through the door and saw inside the room on a card table piles of heroin, glassine envelopes, etc. The outside oEcer stopped defendant, asked her where she was going and where she had come from. She said she had *334 come from 32 Edgecomb Avenue, and he then released her but she was arrested later in the evening.
There are two separate reasons why this search was illegal. First, the informer’s story was not checked either against any previous experience with him or against any objective facts (People v. Coffey, 12 N Y 2d 443), and, second, the evidence was obtained by an illegal, forceful intrusion into this residential building without any emergency or similar condition justifying such an intrusion (Johnson v. United States, 333 U. S. 10; Silverman v. United States, 365 U. S. 505; McDonald v. United States, 335 U. S. 451; People v. Loria, 10 N Y 2d 368; People v. O’Neill, 11 N Y 2d 148; People v. Perlman, 12 N Y 2d 89).
The judgment should be reversed and the indictment dismissed.
Judges Dye, Fulo, Van Voorhis, Burke and Scileppi concur; Judge Bergak taking no part.
In People v. Santiago: Judgment affirmed.
In People v. Martin: Judgment reversed and the indictment dismissed.