**UNITED STATES** of America ex rel.
Thomas H. **FOREMAN**, Petitioner,

v.

J. Leland **CASSELES**, Warden, Sing Sing
Prison, Ossining, N. Y., Respondent.

No. 69 Civ. 4606.

United States District Court,
S. D. New York.

March 4, 1970.

Thomas H. Foreman, pro se.

Louis J. Lefkowitz, Atty. Gen. of State of New York, by Mortimer Sattler, Asst. Atty. Gen., New York City, for respondent.

MANSFIELD, District Judge.

Petitioner who is incarcerated in Sing Sing Prison, seeks a writ of habeas corpus directing his release on various grounds hereinafter discussed. On April 4, 1962, after a jury trial in Kings County, he was convicted of the crimes of first degree robbery, second degree grand larceny, second degree assault and second degree burglary, and was sentenced, as a second felony offender, to concurrent terms of 30 to 60 years, 10 to 20 years, 5 to 10 years, and 10 to 20 years. On appeal the sentence for first degree robbery was reduced to 15 to 20 years, and that for grand larceny to 5 to 10 years.

Since petitioner has exhausted available state remedies by applying for coram nobis relief, denial of which was affirmed, 30 A.D.2d 918, 293 N.Y.S.2d 496 (1968), we proceed to consideration of the various grounds urged by him.

1. *The Incriminating Statements*

Petitioner argues that incriminating statements made by him at two different times, separated by some six months, should not have been admitted into evidence at his trial. He has twice previously attempted-unsuccessfully-to exclude them on grounds other than those he now advances. At his trial he contended that he had not made the statements. The jury's verdict indicates that it rejected this contention. He also argued that the statements, assuming

that he had made them, had not been voluntarily given. The same judge (Leibowitz, J.) who had presided at his trial ruled against Foreman after a Huntley hearing on this question.

■ Foreman now makes two additional arguments. First, he suggests that the statements should have been excluded because the police did not give him the *Miranda* warnings. Since his arrest and trial occurred before the date set by the Supreme Court for the application of *Miranda*, this claim fails. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■ He also resorts to one of the lyrically named doctrines in the legal lexicon, the "fruit of the poisonous tree," Wong Sun v. United States, 371 U.S. 471, 484–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), contending that since there was not probable cause to arrest without a warrant his arrest constitutes the poisonous tree from which grew his statements to the police. Since an arrest without probable cause violates the Fourth Amendment, Henry v. United States, 361 U.S. 98, 100–101, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Giordenello v. United States, 357 U.S. 480, 485–486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), it can serve as the poisonous tree, barring use of resulting fruits, including statements as well as physical evidence. *Wong Sun, supra* 371 U.S. at 485, 83 S. Ct. 407; Collins v. Beto, 348 F.2d 823, 828 (5th Cir. 1965). Although the nature of the authority exercised by the Supreme Court in Wong Sun is not completely clear,[1] its remand of various cases to state courts for reconsideration in the light of *Wong Sun* indicates that the decision was intended to apply to the states. See, e. g., Traub v. Connecticut, 374 U.S. 493, 83 S.Ct. 1899, 10 L.Ed.2d 1048 (1963); Ker v. California, 374 U. S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

---

1. In Clewis v. Texas, 386 U.S. 707, 711, n. 7, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967), Justice Fortas indicated that the Supreme Court "express[ed] no opinion" on the issue whether *Wong Sun* applied to the states. This suggests that *Wong Sun* was based on an exercise by the Supreme Court of its supervisory power rather than a constitutional right.

■ However, the constitutionality of a warrantless arrest by state officials is controlled by state law, in the absence of a federal statute defining the requirements.[2] United States v. Di Re, 332 U.S. 581, 589–590, 68 S.Ct. 222, 92 L.Ed.2d 210 (1947); United States v. Perez, 242 F.2d 867, 869 (2d Cir. 1957). The applicable New York State law, Code of Crim. Proc. § 177, provides that "A peace officer may, without a warrant, arrest a person * * *. (3) When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it."

■ "Reasonable cause" within the New York statute is the same as the federal "probable cause" standard, People v. Lombardi, 18 App.Div.2d 177, 239 N.Y.S.2d 161, aff'd, 13 N.Y.2d 1014, 245 N.Y.S.2d 595, 195 N.E.2d 306 (1963), and is satisfied if the arresting officer is motivated by grounds which would constitute such cause to a reasonable, cautious and prudent police officer. People v. Valentine, 17 N.Y.2d 128, 269 N.Y.S.2d 111, 216 N.E.2d 321, remittitur amended, 17 N.Y.2d 869, 271 N.Y.S.2d 299, 218 N.E.2d 335 (1966); People v. Santiago, 13 N.Y.2d 326, 247 N.Y.S.2d 473, 196 N.E.2d 881 (1964).

■ The record discloses that the police had reasonable or probable cause to arrest petitioner, regardless of when the arrest occurred. Mrs. Pearl Hampton, the victim and complainant, was the superintendent of an apartment building. She collected the rents. The tenants frequently paid by endorsing their pay checks and she would give them the difference between the rent owed and the amount of the check. The owner of the building always gave her cash with which to do this.

On February 3, 1961, a rent-collection day, while Mrs. Hampton was in her apartment with her children and her sister, three men, each of whom wore hose as a mask, entered the room and robbed her. Mrs. Hampton could see the face, and particularly the goatee, of one of the men whose covering was torn in several places. She identified him as Foreman whom she knew and had seen as frequently as once a day for some time preceding the commission of the crime. (Tr. 11, 12, 65)

On the basis of this information, the police visited Foreman, who did have a goatee, at his apartment on February 6, 1961. He voluntarily agreed to accompany them to the police station. An officer who had not taken petitioner to the police station questioned him for some 20 minutes about 1:30 P.M. (Coram Nobis Record ("CNR") 33) Petitioner made the first incriminating statements during this conversation.

Following this interrogation, Foreman was placed in a "cage" or locked room. Mrs. Hampton identified him sometime between 6:00 and 8:00 P.M. (Tr. 43, 47) She also identified him after his apprehension on August 22, 1961. (CNR 59) Her sister never identified petitioner (although it is unclear whether she ever attempted to do so), apparently because she was too frightened by the robbery. (Tr. 49) Between 8:00 and 10:00 P.M. Foreman escaped the cage.

The police apparently never directly informed Foreman that he had been arrested. However, there is no doubt but that they considered him under arrest by the completion of the interrogation, because the interrogating officer, in response to a question posed by the judge who presided at the Huntley hearing, acknowledged that he would have shot Foreman had he tried to leave the sta-

---

2. In *Di Re* state officials made a warrantless arrest of the petitioner for violation of a federal statute. A federal official accompanied the state police, but did not himself make the arrest. The Supreme Court stated "There is no reason to believe that state law is not an equally appropriate standard by which to test arrests without warrant, except in those cases where Congress has enacted a federal rule. Indeed the enactment of a federal rule in some specific cases seems to imply the absence of any general federal law of arrest." 332 U.S. at 589–590, 68 S.Ct. at 226.

tion house. (CNR 35–36) Such detention was consistent only with arrest. Clewis v. Texas, *supra* 386 U.S. at 711, n. 7, 87 S.Ct. 1338.

If the arrest be deemed to have occurred upon completion of the questioning, probable cause was supplied by the incriminating statements. If the arrest preceded the questioning, the identification by Mrs. Hampton was sufficient. Questions concerning the reliability of an identification of a suspect have frequently arisen, especially when an informer gives the information. Compare People v. Verrecchio, 23 N.Y.2d 489, 297 N.Y.S.2d 573, 245 N.E.2d 222 (1969); People v. Corrado, 22 N.Y.2d 308, 292 N.Y.S.2d 648, 239 N.E.2d 526 (1968); People v. Horowitz, 21 N.Y.2d 55, 286 N.Y.S.2d 473, 233 N.E.2d 453 (1967) (informer's information did not furnish probable cause) with People v. Coffey, 12 N.Y.2d 443, 240 N.Y.S.2d 721, 191 N.E.2d 263, remittitur amended, 13 N.Y.2d 726, 241 N.Y.S.2d 856, 191 N.E.2d 910 (1963), cert. denied, 376 U.S. 916, 84 S.Ct. 671, 11 L.Ed.2d 612 (1964) (informer's information furnished probable cause); see also Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959). When the victim or eye-witness provides the description and/or identification, on the other hand, the concern for reliability is considerably less. See e. g., People v. Feldt, 26 A.D.2d 743, 272 N.Y.S.2d 223, (1966), aff'd, 22 N.Y.2d 839, 293 N.Y.S.2d 103, 239 N.E.2d 733 (1968); see also Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305 (D.C.Cir. 1967); Brown v. United States, 125 U.S.App.D.C. 43, 365 F.2d 976 (D.C. Cir. 1966).

■ Since the arrest was constitutional, whether it preceded or followed the questioning, the statements made by Foreman on February 6, 1961, and after his escape and reapprehension on August 22, 1961, could not be rejected on the ground that they were fruits of a poisonous tree.

### 2. *The Identification*

Foreman contends that Mrs. Hampton's identification of him as one of the robbers at the police station on February 6, 1961, was unconstitutionally suggestive.

Sometime between 6:00 and 8:00 P. M., Mrs. Hampton identified Foreman in the office of the investigating detective. Also present were a cousin and an aunt of Foreman. (Tr. 47) There is no indication from the records of either the trial or Huntley hearing as to the way in which the detective characterized Foreman, or presented him to Mrs. Hampton for inspection.

The constitutionality of various methods of identification has posed serious questions. Police practices, especially that of showing the suspect singly, as occurred in this case, have been severely criticized. See the parade of articles cited in United States v. Wade, 388 U.S. 218, 228, n. 6, 229, n. 7, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Because the Supreme Court did not apply *Wade* retroactively, Foreman is restricted to a due process challenge to his identification.

Even though *Wade* was not applied retroactively, the policy announced in that case by the Supreme Court and the criticism leveled at police methods suggest that a pre-*Wade* lineup should be carefully scrutinized. Most courts, although tempted, have resisted granting relief on due process grounds. United States ex rel. Frizer v. McMann (2d Cir., Jan. 27, 1970); Crume v. Beto, 383 F.2d 36, 39 (5th Cir. 1967); Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509, 511–512 (1966); United States v. Chibbaro, 361 F.2d 365, 376–377 (3d Cir. 1966); cf. Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968). A minimum requirement appears to be that the police tactics have suggested one suspect, such as by using a one-man lineup, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966); United States v. Chibbaro, *supra,* by highlighting the suspect in some other way, cf., e. g., Crume v. Beto, *supra,* or by permitting the identification witnesses to reinforce each other's views. Gilbert v. Cal-

ifornia, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

Since petitioner was shown in a one-man lineup, the court is required to examine the "totality of the circumstances," Stovall v. Denno, *supra* 388 U.S. at 302, 87 S.Ct. 1967. Applying this standard, although there is nothing to indicate how suggestive the presentation of Foreman to Mrs. Hampton was, the record does disclose that Mrs. Hampton had seen Foreman frequently, that she identified him within several days after the robbery, that she again identified him at trial (Tr. 12), and that the robbery took place in the daytime when her apartment was well lighted by the combination of daylight and indoor electric lights. Under the circumstances we conclude that the identification, absent persuasive evidence of suggestiveness by the police in presenting Foreman, satisfied pre-*Wade* constitutional requirements.

Although Foreman also contends that he should have been given a lineup with others in it, there is no indication that he asked for one. While *Wade* and its companion cases imply that a lineup which includes others than the suspect should be given whenever exigencies as in *Stovall, supra,* and *Gilbert, supra,* do not prohibit it, the Supreme Court's decision in *Biggers,* where no necessity for promptness was advanced and the one-man lineup was highly suggestive, persuades us that the failure of the police to do so in this case did not constitute constitutional error.

### 3. *The Production of Police Notes*

Petitioner's contention that the court's refusal to make available to him certain notes made by the police constituted a denial of due process must also be rejected.

In an application made in 1965 for a writ of coram nobis, petitioner asked for an order requiring the production of certain records of the New York City Police Department, which was denied on October 1, 1965, after his original trial

counsel advised the court that the records would not help him. Thereafter, Legal Aid Society counsel were assigned and apparently took the same view. In an affidavit dated November 5, 1965, petitioner stated that he did not know the contents of the documents but believed that they "may" tend to corroborate his contention that he was held in custody for an excessive period of time and subjected to coercion before confessing. The application was denied.

The record reveals that during interrogation of Foreman on February 6, 1961, Detective Thornton made some notes on what Foreman said. Upon Foreman's arrest on August 22, 1961, Detective Paine read the notes to Foreman, who admitted that they were accurate. At trial Thornton read the notes in giving his testimony. However, they were not introduced into evidence and Foreman's counsel did not ask to have them marked for identification or to see them.

Although it probably would have been the wiser course to have made the notes available to petitioner for examination at the time of the Huntley hearing, we do not believe that the refusal of the right to examine them amounted to a denial of due process. The notes had been available and used at trial. There never was any effort at trial to withhold the notes or deny access to them. There was every indication that they did not contain anything that would be helpful to Foreman. Certainly this was the view of his trial counsel and the Legal Aid Society attorney later appointed to represent him. We cannot at this late stage set aside the trial or Huntley hearing merely on petitioner's suspicion, unsupported by even the vestige of fact.

The situation here is clearly distinguishable from In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966). In that case the complainant did not appear and the officer, who had made no notes, gave unsworn testimony of incriminating statements made by Gault. Here there were notes which were available at trial and the witness who made

the notes was sworn and subjected to full cross-examination by petitioner's counsel. Thus, there was no denial of his right of confrontation.

The petition is denied.